UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
IN RE VIVENDI UNIVERSAL, S.A.                              :    Civil Action No.
SECURITIES LITIGATION                                         :
                                                                                      :    02 Civ. 5571 (RJH)(HBP)
------------------------------------------------------------------------x
:
LIBERTY MEDIA CORPORATION, LMC                    :
CAPITAL LLC, LIBERTY PROGRAMMING         :
COMPANY LLC, LMC USA VI, INC., LMC USA   :    Civil Action No.
VII, INC., LMC USA VIII, INC., LMC USA X, INC.,   :
                                                                                      :    03 Civ. 2175 (RJH)(HBP)
LIBERTY HSN LLC HOLDINGS, INC.,                      :
and LIBERTY MEDIA INTERNATIONAL, INC.,      :
                                                                                      :    **MEMORANDUM**
                                                                                      :    **OPINION AND ORDER**
                                            Plaintiffs,            :
v.                                                                                   :
                                                                                      :
VIVENDI UNIVERSAL S.A., JEAN-MARIE            :
MESSIER, GUILLAUME HANNEZO, and              :
UNIVERSAL STUDIOS, INC.,                                   :
                                                                                      :
                                            Defendants.       :
------------------------------------------------------------------------x

Third party witness Ernst & Young LLP (U.S.) ("E&Y-U.S.") objects to Magistrate Judge Pitman's order, dated January 9, 2009 (the "Magistrate's Order"), compelling discovery of various documents in its possession. For the reasons stated below, the Court denies the objection.

**BACKGROUND**

Familiarity with the Magistrate's Order is assumed. The Court here provides only a brief summary of the facts and conclusions set forth therein.

This dispute concerns a subpoena served on E&Y-U.S. by class plaintiffs.  In the subpoena, plaintiffs demanded production of all documents relating to audits of Vivendi's U.S. subsidiaries undertaken by E&Y-U.S. at the request of Vivendi's two statutory auditors, the French accounting firms of Ernst & Young et Autres ("E&Y-France") and Salustro-Reydel (a firm unaffiliated with E&Y-U.S.).  (Magistrate's Order at 2-3.)  A similar though broader request for audit workpapers was made to the statutory auditors through letters rogatory.  In two separate French proceedings, the statutory auditors objected to production on the basis that doing so would violate their confidentiality obligations under French law.  (*Id*.)  The Paris Court of First Instance, as regards Salustro-Reydel, and the Nanterre Court of First Instance, as regards E&Y-France, found that France's professional secrecy laws did bar production of Vivendi audit documents by the statutory auditors.  (*Id*. at 4-5.)

In opposing production of workpapers located in the United States, E&Y-U.S. argued to the magistrate, and argues again to this Court, that it is bound by the same professional secrecy laws that barred the statutory auditors' production in France of Vivendi audit documents.  (E&Y-U.S. Br. at 2-3.)  Under French law, it argues, Vivendi's statutory auditors are permitted to hire whatever "experts or employees" they choose in performing their auditing function for Vivendi.  (*Id*.)  These experts are vested with the same investigative powers as the statutory auditors and are bound by the same "professional secrecy in respect of all facts, actions and information of which they have knowledge on account of their functions."  (*Id*.)  Here, Vivendi's statutory auditors hired E&Y-U.S. from approximately October 30, 2000 to August 14, 2002 to perform auditing and accounting services for Vivendi subsidiaries located in the United States.  (Magistrate's Order at 2.)  E&Y-U.S. argues that because the statutory auditors hired it as an "expert", it is bound by France's professional secrecy laws even though it performed its work in

the United States and the documents are located here.  (E&Y-U.S. Br. at 3.)  It further argues that, like the statutory auditors, it is subject to criminal liability under French law if it violates professional secrecy.  (*Id*.)

In contrast, plaintiffs argue that production is required for the simple reason that the Court has jurisdiction over E&Y-U.S. and that E&Y-U.S. has control over responsive documents located here.  (*Id*.)  E&Y-U.S. does not dispute the jurisdiction of this Court and concedes that it has in its possession approximately 38 boxes of documents responsive to plaintiffs' subpoena.  (Magistrate's Order at 8-9.)  E&Y-U.S. responds that jurisdiction and possession are dispositive only of whether the Court has the power to compel production, not whether the Court should compel production.  (E&Y-U.S. Br. at 14-15.)  To determine whether the Court should compel production, E&Y-U.S. argues that the Court must apply a comity analysis.  (*Id*.)  Under such a comity analysis, E&Y-U.S. claims, the subpoena should be quashed.  (*Id*.)

In his order, the magistrate judge granted plaintiffs' motion to compel.  (Magistrate's Order at 12.)  He first held that no "true conflict" existed between France's professional secrecy laws and the Federal Rules of Civil Procedure because E&Y-U.S. had "not sustained its burden of demonstrating" such a conflict.  (*Id*. at 7.)  Specifically, the magistrate judge found decisive E&Y-U.S.'s failure to cite French legal authorities defining an "expert" under French law.  (*Id*.)  Having insufficient authority to conclude that E&Y-U.S. was subject to criminal liability under French law and citing E&Y-U.S.'s burden when resisting a subpoena, the magistrate judge held that French law should not be an impediment to enforcement of the subpoena.  (*Id*.)

The magistrate judge further held that even if there was a conflict, a comity analysis supported production.  Citing *Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987), he proceeded to weigh four factors in the comity analysis:  (1) the

competing interests of France and the United States; (2) the hardship to E&Y-U.S. if it complied with the subpoena; (3) the importance of the documents requested; and (4) E&Y-U.S.'s good faith in resisting the subpoena. (*Id*. at 9-10.) The magistrate judge found that the first three factors favored plaintiffs while the last was neutral. (*Id*. at 10-12.) The first factor favored plaintiffs because the United States' interest in enforcing its securities laws was strong, while the French interest in enforcing its professional secrecy laws extraterritorially against U.S. entities was weak. (*Id*.) The second factor also favored plaintiffs because any hardship to E&Y-U.S. stemmed from its potential prosecution by French authorities—a possibility that the magistrate judge found was "remote". (*Id*.) The third factor favored plaintiffs because "it would be extremely surprising if [E&Y-U.S.] did not have at least some relevant documents." (*Id*. at 11.) Finally, the fourth factor is neutral because E&Y-U.S. resisted on the basis of its French counsel's good faith belief that French law barred production. (*Id*. at 11-12.) On balance, the magistrate held that comity militated in favor of granting the motion to compel. (*Id*. at 12.)

  E&Y-U.S. makes the following objections to the magistrate judge's analysis: (1) the magistrate ignored the unrebutted declarations of a French auditor and a French attorney, each of which supported a finding that France's professional secrecy laws bound E&Y-U.S.; (2) the magistrate ignored an unrebutted declaration of a French attorney stating that the possibility of prosecution for breach of France's professional secrecy laws is not remote; (3) the magistrate ignored the decisions issued by French courts when they could be fairly read to encompass the documents in dispute; (4) the magistrate applied a relevancy standard to the comity analysis when he should have applied a higher standard; and (5) the magistrate confused its power to compel with the proper exercise of that power under a comity analysis. (E&Y-U.S. Br. at 1-2.)

4

**ANALYSIS**

Review of a magistrate judge's decision depends on whether the matter at issue is a dispositive or non-dispositive matter under Federal Rules of Civil Procedure 72 and 28 U.S.C. § 635(b)(1). *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Where the matter is non-dispositive, the district court must review the magistrate's order only when timely objection is made, and it may only "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 635(b)(1)(A); *Williams v. Beemiller, Inc.*, 527 F.3d 259, 264 (2d Cir. 2008). The "clearly erroneous" or "contrary to law" standard is applicable to the dispute at hand because an order to compel under Rule 45 of the Federal Rules of Civil Procedure is non-dispositive. *Thomas E. Hoar, Inc.*, 900 F.2d at 525 ("Matters concerning discovery generally are considered 'nondispositive' of the litigation.").

Taking E&Y-U.S.'s last objection first, the Court concludes that the magistrate judge did not confuse "can compel" with "should compel". While the magistrate could have considered the issues of jurisdiction and custody of the documents first, the Magistrate's Order concludes its treatment of these issues with "this Court *can* compel E&Y-U.S. to produce these documents." (Magistrate's Order at 9.) Nowhere does the magistrate conclude that "can" implies "should". Furthermore, this Court rejects plaintiffs' position that jurisdiction and custody of the documents were sufficient grounds for the magistrate's decision. A comity analysis is generally required. *See First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 22 (2d Cir. 1998) (noting the requirements of comity when deciding whether to enforce a subpoena requesting documents located abroad).

The magistrate judge correctly noted that a comity analysis is necessary only if a true conflict exists between the rules of discovery and French law.  *See Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 798 (1993) ("We have no need in this litigation to address other considerations that might inform a decision to refrain from the exercise of jurisdiction on grounds of international comity [when no true conflict exists]."); *In re Maxwell Comm'n Corp.*, 93 F.3d 1036, 1049 (2d Cir. 1996) ("International comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction.").  Where the forum's law requires production, the party resisting production bears the burden of demonstrating that a conflict of law exists.  *See In re Grand Jury Proceedings*, 40 F.3d 959, 964 (9th Cir. 1994) ("A party relying on foreign law to contend that a district court's order violates principles of international comity bears the burden of demonstrating that the foreign law bars compliance with the order."); *see also United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) ("The party asserting the privilege must establish the essential elements of the privilege.")  Here, the magistrate correctly held that E&Y-U.S. bears the burden of proving that French law bars it from producing the requested documents.

In this Court's view, E&Y-U.S. has met that burden.  Under Rule 44.1 of the Federal Rules of Civil Procedure, it is for the court to determine the content of foreign law, and such a determination is not a finding of fact but a "ruling on a question of law."  Fed. R. Civ. P. 44.1.  The court may examine a wide array of materials to determine foreign law, Fed. R. Civ. P. 44.1, but it is under no obligation to do so if the party whose burden it is fails to produce sufficient evidence that foreign law applies.  *Loebig v. Larucci*, 572 F.2d 81, 85 (2d Cir. 1978) ("Rule 44.1 of the Federal Rules of Civil Procedure permits parties to present information on foreign law, and the court may make its own determination of foreign law based on its own research, but it is

not mandatory that it do so."); *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, (E.D.N.Y. 2007) (collecting cases).  Here, the magistrate did not err, as E&Y-U.S. contends, because it failed to hear oral argument or request additional materials from the parties.  However, a plain reading of the unrebutted materials submitted by E&Y-U.S. demonstrates that French law does indeed bar production of the requested documents.  Article L, 822-15 of the *Code de commerce* states clearly that "the statutory auditors and their employees *and experts* are bound by professional secrecy in respect of all facts, actions and information of which they have knowledge on account of their functions." (emphasis added)  The French courts in Paris and Nanterre have also held that France's professional secrecy laws bar the statutory auditors from producing the same documents requested from E&Y-U.S.  (Magistrate's Order at 4-5.)  In light of the express language in Article L, 822-15, there is no reason why these decisions would not apply equally to the "their employees and experts".  Furthermore, French penal law makes clear that criminal penalties for violating this bar apply extraterritorially to non-nationals.  Article 113-7 of the *Code penal* ("French criminal law applies . . . to any offense committed by . . . a foreigner outside France, where the victim is a French citizen at the time of the offense.").

Indeed, the only possible question regarding the applicability of French law would the one the magistrate focused on:  whether or not E&Y-U.S. qualifies as an "expert" under the *Code de commerce*.  While the Court admits that French law might provide for subtle distinctions on this point, the most plausible reading of the statute's text is that an American accounting firm assisting in the audit of Vivendi's American subsidiaries would qualify as an expert.  There may be French law contradicting this conclusion, but the Court has seen no evidence suggesting as much, and E&Y-U.S.'s burden cannot possibly include proving a negative.  Similarly, E&Y-U.S.'s legal expert opines specifically that "Ernst & Young LLP [is] subject to Article L.822-15

7

of the Code of commerce", (Costantini Decl. Ex. 3), and neither party has given the Court any reason to doubt this conclusion.  Given that there is no equivalent privilege under U.S. law that would shield auditors from discovery, the Court concludes that French law likely conflicts with U.S. law regarding the production of documents in this case.

Because the magistrate judge's comity analysis ultimately produces the correct result, however, the magistrate judge's error regarding the applicability of French law is not dispositive.  Courts in this Circuit weigh the following factors when applying principles of comity to international discovery disputes:  "(1) the competing interests of the nations whose laws are in conflict, (2) the hardship of compliance on the party or witness from whom discovery is sought, (3) the importance to the litigation of the information and documents requested, and (4) the good faith of the party resisting discovery."  *Minpeco, S.A. v. Conticommodity Servs.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987); *see also First Am. Corp.*, 154 F.3d at 22 (affirming the use of the *Minpeco* factors by the district court).

Regarding the first factor, there is little doubt that the United States has a strong interest in enforcing its securities laws and ensuring the compliance of its citizens with the Federal Rules of Civil Procedure.  *See SEC v. Banca Della Svizzera Italiana*, 92 F.R.D. 111, 118 (S.D.N.Y. 1981) ("The strength of the United States interest in enforcing its securities laws to enforce the integrity of its financial markets cannot seriously be doubted."); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips*, 105 F.R.D. 16, 30 (S.D.N.Y. 1984) ("[T]he United States has a substantial interest in fully and fairly adjudicating matters before its courts.  This is only possible with complete discovery.").  In light of the decisions issued by the French courts in Paris and Nanterre, and especially in light of the French government's intervention in

those cases, (Borde Decl. at 3), the Court also finds that France has a strong interest in the compliance of its citizens with its professional secrecy laws.

It does not follow, however, that France has an equally strong interest in prescribing the conduct of non-nationals located abroad. Article 113-7 of France's penal code appears to adopt what is known as the "Effects Principle" with regard to its jurisdiction to prescribe the conduct of non-nationals extraterritorially. *See* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 402 cmt. d. This principle is generally restricted to circumstances where the effect is "substantial", and "states normally refrain from prescribing laws that govern activities connected with another state when the exercise of such jurisdiction is unreasonable." *In re Maxwell Comm'n Corp.*, 93 F.3d at 1047-48. Whether an exercise of jurisdiction is "unreasonable" is determined by evaluating all relevant factors including,

> the link between the regulating state and the relevant activity, the connection between that state and the person responsible for the activity (or protected by the regulation), the nature of the regulated activity and its importance to the regulating state, the effect of the regulation on justified expectations, the significance of the regulation to the international system, the extent of other states' interests, and the likelihood of conflict with other states' regulations.

*Id.* (citing the Restatement). While this laundry list of factors might be difficult to apply in other contexts, its application to the dispute at hand is fairly simple. E&Y-U.S. is a Delaware corporation whose principal place of business is New York. (Magistrate's Order at 1.) Both it and the American corporations it audited are governed by American corporate law, and presumably it conducted those audits in accordance with U.S. accounting principles. The only connection these activities have with France is that they were conducted pursuant to instructions from French accounting firms. While refusing to enforce France's professional secrecy laws might upset the expectations of those accounting firms, it is not clear that those expectations are reasonable in light of their purposeful availment—as well as Vivendi's purposeful availment—of

9

U.S. resources.  Perhaps if, pursuant to their audit, E&Y-U.S. received confidential information from the statutory auditors concerning French corporations, the French interest in preventing disclosure of such information would be non-trivial.  But there is no evidence before the Court that the documents at issue contain such information.  Accordingly, the French interest in prescribing E&Y-U.S.'s conduct is weak, and the first factor tips in favor of production.

E&Y-U.S. objects that the magistrate erred in its consideration of the second factor by ignoring the declaration of its legal expert, Dominique Borde, that the possibility of E&Y-U.S.'s criminal prosecution for production was not remote.  The magistrate was not, however, obliged to rely on Borde's statement.  Borde provides no basis for his opinion besides noting the intervention of the French Public Prosecutors in the Paris and Nanterre proceedings.  Prosecuting French companies in France for a violation of French law is a far cry from prosecuting a U.S. company located in the U.S. for a violation of French law.  The French government has expressed no opinion on whether it would prosecute E&Y-U.S.  *SEC*, 92 F.R.D. at 117-18 (noting importance of Swiss government's failure to object to disclosure).  Indeed, it is not clear that any court would have jurisdiction to try E&Y-U.S. for violations of French law.  Absent a realistic threat of prosecution, there is no hardship for E&Y-U.S. to production.  Accordingly, E&Y-U.S.'s objection has no merit, and the second factor tips in favor of production.

E&Y-U.S. also objects to the magistrate's use of a relevancy standard in weighing the third factor. It is true that some courts have required that the requested documents be "crucial" to plaintiffs' case for this factor to tip in favor of production.  *See, e.g.*, *In re Uranium Antitrust Litig.*, 480 F. Supp. 1138, 1146, 1154-55 (N.D. Ill 1979) ("[The] normal standard of whether a document is relevant or is calculated to lead to the discovery of admissible evidence . . . should be replaced by the higher standard of whether the requested documents are crucial to the

10

resolution of a key issue in the litigation."). This is not the standard set by *Minpeco*, however, which examines more flexibly how important the documents are. *Minpeco*, 116 F.R.D. at 523. Here, plaintiffs have made no showing that the requested documents are "crucial" to plaintiffs' case. Nevertheless, the documents requested are, at least generally, directly relevant to plaintiffs' case, and it is again E&Y-U.S.'s burden to demonstrate why specific documents or categories of documents lie outside the scope of the subpoena. In the absence of better information from the parties, the Court concludes that the third factor is neutral, tipping neither towards production nor non-production.

Finally, the fourth factor tips in favor of non-production. E&Y-U.S. explicitly states that it is withholding the documents on advice from French counsel. There is no evidence in the record to doubt this statement, and plaintiffs do not dispute it.

The fourth factor tipping against production is not enough to overcome the first two factors tipping in favor of production. On balance, the factors tip in favor of production.

## CONCLUSION

The Court holds that the Magistrate's Order compelling production is not contrary to law, and E&Y-U.S.'s objections are accordingly DENIED. E&Y-U.S. is directed to promptly produce the documents they have that are responsive to plaintiffs' subpoena.

SO ORDERED.

Dated: New York, New York
       May 28, 2009

                                                    Richard J. Holwell
                                                    United States District Judge

11