UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE VIVENDI UNIVERSAL, S.A.　　　　　　　　02 Civ. 5571 (RJH) (HBP)
SECURITIES LITIGATION

**MEMORANDUM OPINION
AND ORDER**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

　　　　The following applications by the parties have been fully briefed and are currently pending before the Court: (1) Individual Plaintiffs' Motion for Reconsideration of the Order Granting Defendant Guillaume Hannezo's Motion to Dismiss; (2) Individual Plaintiffs' Motion to Lift Stay; (3) Individual Plaintiffs' Motion for Leave to Amend Complaints; (4) plaintiff GAMCO's Motion for Leave to File an Amended Complaint and for Nine Mutual Funds to be Joined as Additional Plaintiffs; (5) defendants Messier and Vivendi's Cross-Motion to Dismiss with Prejudice WSV's Action; (6) Ernst & Young's Motion for Reconsideration of this Court's Memorandum Opinion and Order, Dated May 28, 2009; and (7) GAMCO's Motion to strike the Expert Report of John W. Peavy, III. Also pending are defendants' objections to orders issued by Magistrate Judge Pitman on (8) August 15, 2006 and (9) January 30, 2009, (10) Individual Plaintiffs' letter request to substitute Dr. Blaine Nye for Mr. Frank Torchio as their causation and damages expert, and (11) defendant's request to exclude deposition designations for certain deponents. The Court renders or reserves decision on these motions as described below. The Court will address any outstanding issues not addressed or disposed of by this Order at the conference scheduled for July 20, 2009 at 10:30 a.m.

**I.      Individual Plaintiffs' Motion for Reconsideration**

Individual Plaintiffs move the Court to reconsider its order dismissing their claims against defendant Hannezo for failure to timely serve him a summons and complaint. Reconsideration is appropriate when there are "matters or controlling decisions which counsel believes the court has overlooked." Local Civil Rule 6.3. "A motion for reconsideration is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved." *Davey v. Dolan*, 496 F. Supp. 2d 387, 389 (S.D.N.Y. 2007). Here, Individual Plaintiffs argue that the Court overlooked this Circuit's controlling authority in *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) and *USHA (India), Ltd. v. Honewell Int'l, Inc.*, 421 F.3d 129, 133-34 (2d Cir. 2005), that the Court overlooked language in its own January 7, 2008 Order, and that a flexible due diligence standard should apply to Individual Plaintiffs' service on defendant Hannezo.[1]

The Court concludes that Individual Plaintiffs have failed to point to any controlling authority or facts not previously considered by the Court and that they are, in essence, rearguing the same points they previously made on the underlying motion. The Court's original opinion cited *Montalbano* and *USHA* for the proposition on which its holding rested. The fact that Individual Plaintiffs have a different interpretation of those cases is not grounds for reconsideration. The Court similarly did not overlook its own order, which is again cited and discussed in its original opinion. What Individual Plaintiffs fail to grasp is that the Court's January 7, 2008 Order was at best a reprieve from the already long-ticking clock applicable to many of their complaints. While Individual Plaintiffs seek relief under an essentially equitable

---

[1] Individual Plaintiffs also argue that the 9th Circuit's decision in *Lucas v. Natoli*, 936 F.2d 432 (9th Cir. 1991) counsels in favor of reconsideration. Because this decision is not in any sense "controlling" of the decisions of this Court, especially where there are two relevant 2nd Circuit decisions that are controlling, the Court declines to consider Individual Plaintiffs' arguments based on this decision.

2

doctrine of due diligence, they refuse to admit that for many of them, the Court's January 7, 2008 Order was already an equitable extension of the 120 day deadline to at least attempt service. Accordingly, the Court denies Individual Plaintiffs' motion for reconsideration and adheres to its previous holding.

## II.     Individual Plaintiffs' Motion to Lift Stay

Certain Individual Plaintiffs move the Court to lift the stay[2] automatically imposed on their newly-filed actions[3] against defendant Hannezo. In its March 16, 2009 Order, the Court dismissed actions by these plaintiffs against defendant Hannezo for untimely service. When plaintiffs re-filed against Hannezo, their actions were automatically stayed by the Court's January 7, 2008 Order. Plaintiffs' actions against defendants Vivendi and Messier were left untouched by the Court's March 16, 2009 Order, and those actions are still scheduled for trial beginning on September 29, 2009. In essence, plaintiffs seek the Court's leave to proceed to trial against Hannezo when they proceed against Vivendi and Messier. In the alternative, plaintiffs move the Court to lift the stay for the sole purpose of serving Hannezo. Defendant Hannezo responded to plaintiffs' motion by letter dated May 6, 2009, in which he stated that: (1) he believes plaintiffs are free to serve him without an order of the Court provided that service is effected in compliance with the Hague Convention; and (2) if he is properly served, and plaintiffs' complaints survive any dispositive motions filed, he has no objection to plaintiffs' actions against him being tried with the Class on September 29, 2009.

---

[2] Plaintiffs do not move the Court to lift the stay in place for the following actions: 08 Civ. 2056, 08 Civ. 2057, 08 Civ. 2058, 08 Civ. 2166, and 08 Civ. 2214. Nothing in this Order should be construed as disturbing the stay for those actions.

[3] 09 Civ. 2568, 09 Civ. 2592, 09 Civ. 2603, and 09 Civ. 2611.

Upon receiving a copy of Hannezo's letter, plaintiffs allegedly served him in compliance with the Hague Convention on May 7, 2009.  In light of Hannezo's position, the Court lifts the stay on plaintiffs' actions.  Should Hannezo wish to move the Court to dismiss plaintiffs' claims on the ground that they are barred by the statute of limitations—an issue on which the Court expresses no opinion at this time—he must do so by July 10, 2009.  Plaintiffs will have until July 17, 2009 to respond, and Hannezo until July 22, 2009 to reply.  Discovery, however, is closed, and no additional discovery will be taken.

### III.   Individual Plaintiffs' Motion for Leave to Amend Complaints

Individual Plaintiffs move for leave to amend their complaints in accordance with the Court's March 31, 2009 Order to correct any defects in their standing to bring suit.[4]  Many plaintiffs need not seek leave of the Court to amend their complaints, and for those that do, Rule 15(a) of the Federal Rules of Civil Procedure directs that leave should be "freely give[n]" when "justice so requires".  Defendants Vivendi and Messier do not oppose Individual Plaintiffs' motion save for the motion by WSV, which is addressed below.  Accordingly, the Court finds that amendment is appropriate and grants Individual Plaintiffs' motion save for the motion made by WSV.  Defendant Hannezo correctly notes that the complaints in question have been dismissed as against him, and hence this portion of the Court's order does not apply to him.

---

[4] In its memorandum opinion and order, the Court directed plaintiffs who alleged standing by virtue of assignment or ratification to move to amend their complaints within 30 days to allege this assignment or ratification.  The Court further directed plaintiffs to submit or resubmit whatever documentation they relied on for assignment or ratification within the same 30 days.  By letter dated April 30, 2009, 30 days after issuance of the Court's order, Individual Plaintiff KBC requested permission from the Court to submit "a ratification and assignment of claims from Pensionfonds METAAL Fund" a week late.  By letter dated May 1, 2009, defendants objected to the late submission.  KBC did submit METAAL Fund's ratification and assignment four days later on May 4, 2009, but due to the lateness of the submission, KBC did not include this assignment in its amended complaint.  The Court retroactively grants KBC permission to file its submissions late, but directs it to file an amended complaint reflecting the METAAL Fund assignment.

## IV. Plaintiff GAMCO's Motion for Leave to File an Amended Complaint and for Nine Mutual Funds to be Joined as Additional Plaintiffs

Plaintiff GAMCO moves for leave to amend its complaint in accordance with the Court's March 31, 2009 Order to correct any defects in its standing to bring suit. Nine mutual funds that relied on a subsidiary of GAMCO, Gabelli Funds, LLC, for investment advice (the "Funds"), also move to be joined in the amended complaint as plaintiffs. Defendant Vivendi opposes only joinder of the Funds, arguing that joinder would require additional discovery, which would, at this stage, delay the September 29, 2009 trial date.

The Court finds that amendment is appropriate and grants GAMCO leave to file its amended complaint, but denies the Funds' motion to join GAMCO's action. "Rule 20, unlike its counterpart, Rule 19, prescribes permissive, not necessary, joinder and specifically vests in the district court the discretionary power to make such orders as may be required to prevent delay or prejudice." *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126-27 (2d Cir. 1970). While the Court concedes that Rule 20 should be interpreted liberally to allow joinder whenever it would promote efficiency, the Court does not believe joinder would be efficient here. Discovery is closed, and regardless of how "minimal" discovery would be for the Funds if they were allowed to join this suit on the eve of trial, it would inevitably delay the trial date and disrupt pre-trial preparations. The Funds are free to opt out of the class and file their own lawsuits without fear of any statute of limitations bar. *See Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 n.13 (1974) ("Petitioner also argues that class members will not opt out because the statute of limitations has long since run out on the claims of all class members other than petitioner. This contention is disposed of by our recent decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), which established that commencement of a class action tolls the applicable statute of limitations as to all members of the class."). Should they do

so, however, their complaints will be stayed along with the other plaintiffs from whom discovery has not yet been taken.

## V.     Defendants' Cross-Motion to Dismiss with Prejudice WSV's Action

Defendants Vivendi and Messier oppose WSV's motion to amend its complaint to allege assignment of certain claims, and cross-move to dismiss WSV's action with prejudice for failure to prosecute.  The primary basis for defendants' opposition and cross-motion is a series of representations, both to defendants and to this Court, that WSV had abandoned its action. Specifically, WSV's counsel represented in a letter to defendants dated October 24, 2008 that "[WSV] will be dismissing its action" and subsequently sent defendants a signed stipulation to dismiss its action with prejudice on February 10, 2009.[5]  Most significantly, the brief that Individual Plaintiffs filed in response to defendants' motion for summary judgment for lack of standing states that "[p]laintiff WSV intends to voluntarily dismiss its action" and the Counterstatement of Facts accompanying that brief states more explicitly that "WSV is no longer pursuing claims for any funds."  Defendants argue that they would be prejudiced if the Court permitted WSV's action to proceed because they relied on these statements and because WSV has done nothing to move its case forward for more than six months.  WSV responds that it changed its mind concerning dismissal and properly awaited the Court's decision on defendants' standing motion.  While it concedes that dismissal is appropriate for certain funds it originally purported to represent, for others it has obtained assignments pursuant to the Court's March 31, 2009 Order, and argues that defendants would suffer no prejudice from its action moving forward on their behalf.

---

[5] A week later, WSV sent defendants a letter revoking its consent to dismiss its action.

When a sophisticated party represented by counsel expressly disclaims further pursuit of its action in briefs submitted with the Court, it constitutes a "binding abandonment of plaintiffs' claim[s]." *Conboy v. AT&T Corp.*, 241 F.3d 242, 250 (2d Cir. 2001); *see also Lipton v. County of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."); *Arbercheski v. Oracle Corp.*, No. 05 Civ. 591 (DLC), 2005 WL 2290206, at *3 (S.D.N.Y. Sept. 19, 2005) ("[W]here a plaintiff expressly states in motion papers that her complaint does not allege a particular claim, such a statement 'constitutes an express and binding abandonment' of the claim.") (citing *Conboy*, 241 F.3d at 250). Just as courts hold parties to their concessions on the facts, *see Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact."), courts can hold parties to their abandonment of claims to preserve the efficiency and integrity of the courts.

Here, WSV offers no explanation for its sudden reappearance in this action, and the Court can find no reason why it shouldn't hold WSV to its earlier insistence that it was abandoning its claims. Particularly exasperating is WSV's failure to explain why dismissal is appropriate for some of its funds but not others. Perhaps if WSV had quickly withdrawn the statements it made in its response to defendants' standing motion, dismissal would be inappropriate, but WSV actually waited for the Court's decision on that motion before making its position known. Moreover, the Court's failure to mention WSV in its decision does not mean that the Court did not rely on WSV's representations. Because no stipulation had been entered in the record, the Court did not mention WSV in its March 31, 2009 standing opinion, but the Court nevertheless assumed that WSV had abandoned its claims and would eventually stipulate to dismissal.

WSV cannot make statements on which both the Court and the parties rely without consequence. While the Court could direct the parties to re-brief defendants' summary judgment motion, such an action would further delay and disrupt trial preparations in a case that has been pending for more than seven years. The Court concludes that WSV's action should be dismissed with prejudice.

## VI.    Ernst & Young's Motion for Reconsideration

Third-party witness Ernst & Young-U.S. moves for reconsideration of the Court's May 28, 2009 Opinion denying its objections to Magistrate Judge Henry Pitman's Order compelling Ernst & Young-U.S. to produce certain audit documents. Ernst & Young-U.S. argues that the Court overlooked its argument that the decisions of the French courts in Paris and Nanterre collaterally estop plaintiffs from seeking the audit documents in question. Plaintiffs respond that an international comity analysis is appropriate in these circumstances rather than collateral estoppel, that the Court's May 28, 2009 Opinion engaged in a comity analysis, and that the Court reached the correct result under its comity analysis.

The Court had previously considered and rejected Ernst & Young-U.S.'s argument because it confuses two kinds of international comity. One situation in which courts apply an international comity analysis is when "a domestic court considers whether to accept the adjudication of a foreign tribunal on a cause of action or a particular issue . . . ." *Diorinou v. Mezitis*, 237 F.3d 133, 139 (2d Cir. 2001). Another situation is "when there is a true conflict between American law and that of a foreign jurisdiction" and a domestic court is asked to apply the conflicting foreign law. *In re Maxwell Comm'n Corp.*, 93 F.3d 1036, 1049 (2d Cir. 1996). In its May 28, 2009 Opinion, the Court applied the latter form of comity analysis. To the extent

Ernst & Young-U.S. is now arguing that the former form should be applied, it is mistaken. While the documents at issue here are admittedly a subset of those sought in Paris and Nanterre, those documents were sought not from Ernst & Young-U.S. but from Vivendi's French auditors. The French courts decided whether French law applies to bar Vivendi's French auditors from producing certain documents, not whether French law bars American auditors hired by Vivendi's French auditors from producing those same documents. The issues are not the same, and the Court did not consider, and need not have considered, whether a separate comity analysis requires this Court to enforce the French courts' holdings against plaintiffs here.[6]

Accordingly, Ernst & Young-U.S.'s motion for reconsideration is DENIED. Ernst & Young-U.S. is directed to produce the requested documents to plaintiffs by July 1, 2009 at 9 a.m. The Court acknowledges that reviewing additional boxes of documents at this juncture is a burden on all parties. The parties are directed to confer on an appropriate schedule for review, and while all outstanding issues must still be submitted to the Court by July 20, 2009, the parties are otherwise exempt from the Court's scheduling Order signed April 23, 2009 for all matters concerning the Ernst & Young-U.S. documents.

**VII.    GAMCO's Motion to Strike the Expert Report of John W. Peavy, III**

In connection with its opposition to defendants' motion for summary judgment for lack of standing, GAMCO moved the Court to strike the expert report of John W. Peavy, III—submitted by defendants in support of their summary judgment motion—because it

---

[6] The Court acknowledges that "issue preclusion", still known in some circumstances as "non-mutual collateral estoppel", does not require that the parties be the same. *Sandler v. Simoes*, 609 F. Supp. 2d 293, 299 (E.D.N.Y. 2009) ("Under non-mutual collateral estoppel, if a litigant has had an opportunity to fully and fairly litigate an issue and lost, then third parties unrelated to the original action can bar the litigant from relitigating that same issue in a subsequent suit.") (quoting *Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 Fed. Appx. 52, 54 (2d Cir. 2008)). The Court simply concludes that the issue here is not the same as that addressed by the French courts because the application of French law depends on the identity and location of the parties.

9

impermissibly opined on the legal issue of standing.  The Court decided defendants' standing motion in one of the three opinions it issued on March 31, 2009.  Accordingly, GAMCO's motion to strike is now moot, and the Court denies it as such.

The Court notes that plaintiffs have moved *in limine* for a final determination of their standing to bring suit.  Should defendants resubmit Mr. Peavy's expert report in opposition to this motion, the Court will again consider GAMCO's objections.

**VIII.   Magistrate Judge Pitman's August 15, 2006 Order**

By letter dated August 22, 2006, defendant Vivendi objects to Magistrate Judge Pitman's August 15, 2006 order providing that Special Master Cartusciello's Report (the "Cartusciello Report" or the "Report") should be disclosed to plaintiffs.  The Cartusciello Report was generated on consent of the parties to resolve a dispute over production of certain deposition transcripts taken in the SEC's investigation of Vivendi.  The Report concluded that the transcripts should be produced in full, and Vivendi acceded to the Report's conclusion.  Having disclosed the transcripts, Vivendi argues that the Report should not be disclosed to plaintiffs because:  (1) the Report is irrelevant; (2) plaintiffs have no litigation need for the Report; and (3) the contents of the Report are highly prejudicial.  Plaintiffs respond that nothing in defendant's arguments suggests that Judge Pitman's ruling was "contrary to law" as required by Rule 72(a) of the Federal Rules of Civil Procedure.

For non-dispositive matters such as this, Rule 72(a) provides that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  A strong presumption exists in favor of public disclosure of "judicial documents".  *United States v. Amodeo*, 71 F.3d 1044, 1047-48 (2d Cir.

1995). The Court of Appeals has specifically found that the reports of special masters, like the one at issue here, qualify as judicial documents subject to the presumption. *Id*. (special master's report concerning investigation of corruption at union was a judicial document subject to presumption). Here, defendant is not requesting that the Court block public disclosure of the document, or even redact particular portions, but rather block plaintiffs' access to the document. On this narrow issue, the Court agrees with plaintiffs that defendant has offered no reason why the magistrate's order is clearly erroneous or contrary to law. Relevance and prejudice go towards the Report's introduction into evidence not its disclosure to the plaintiffs and in any event do not overcome the presumption in favor of disclosure.

      The Court directs defendant to make the Cartusciello Report available to plaintiffs. While the Court has not foreclosed consideration of the issue, at this juncture it appears to the Court that no portion of the Report is admissible evidence.

### IX.    Magistrate Judge Pitman's January 30, 2009 Order

      Defendant Vivendi objects to Magistrate Judge Pitman's January 30, 2009 order denying Vivendi's application under the Stipulation and Order for the Production and Exchange of Confidential Information for return of two privileged documents that were inadvertently produced to plaintiffs. Conceding privilege for all but certain portions of one of the documents, plaintiffs had argued to Judge Pitman that return was inappropriate because defendant had waived privilege by voluntarily turning these documents over to the Commission des Opérations de Bourse ("COB"). Defendant responded, and argues again in its objection, that it did not produce the documents voluntarily, that the COB seized the documents without an opportunity for defendant to review them, and that therefore it did not waive privilege. Judge Pitman denied

defendant's application because he found that "the evidence concerning the nature of [the COB's] investigatory visit is in equipoise". (Order dated January 30, 2009.) Given that defendant bore the burden of proving that it hadn't waived privilege, Judge Pitman concluded that absent additional evidence from defendants to tip the scales, waiver was appropriate.

The Court agrees that the sole issue is whether or not defendant voluntarily turned over the documents to the COB. *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) (holding that voluntary production of privileged documents to an adversary waives privilege). The Court does not conclude as the magistrate did, however, that the evidence concerning the COB's "investigatory visit" was in equipoise. Plaintiffs' legal expert, Maxime Delespaul, did not consider the effect of Article L. 642-3 of the French monetary and financial code but only the difference between Articles L. 621-10 and 621-12. (*See* Delespaul Decl.) The parties do not dispute that the COB obtained the documents under Article L. 621-10, which unlike Article L. 621-12 does not grant the COB the power to use force to obtain documents. Defendant's legal expert, Hervé Pisani, provides sworn testimony that the COB's "request" for documents under Article L. 621-10 was nevertheless coercive because defendant would have been criminally liable under Article L. 642-3 for refusing. (*See* Pisani Decl. ("The French monetary and financial Code expressly punishes obstructions to the COB investigators' rights pursuant to Article L. 621-10.")); Article L. 642-3 ("Any person who obstructs a mission of COB investigators carried out pursuant to Article L. 621-10, shall incur a penalty of two years imprisonment and a fine of 300,000 euros."). Mr. Delespaul's statement that "in practice" companies may refuse production—citing a single non-prosecution—does not remove the threat of sanction. (*See* Delespaul Decl.) Accordingly, the Court concludes that defendant's

12

"production" of documents to the COB was not voluntary and therefore that the magistrate's order was in fact contrary to law.

The Court directs plaintiffs to return the two documents to defendants as well as any copies made of those documents, in whole or in part. To the extent copies of these documents have been publicly filed on the docket, defendants are directed to submit to the Court a letter listing specific docket entries containing those copies, and the Court will order them sealed.

**X.   Individual Plaintiffs' Request to Substitute Dr. Blaine Nye for Mr. Frank Torchio**

By letter dated April 13, 2009, Individual Plaintiffs requested permission to designate Dr. Blaine Nye as one of their expert witnesses at trial instead of Mr. Frank Torchio, and to adopt Dr. Nye's expert reports on the issues of causation, materiality, market efficiency, and per share damages. Defendants objected to this request by letter dated April 22, 2009, and, after both sides submitted several additional letters to the Court, Individual Plaintiffs modified their original request. Individual Plaintiffs still wish to designate Dr. Nye as, at the very least, their loss causation expert, while retaining Mr. Torchio as their damages expert. Defendants maintain their objections.

Because proving loss causation in this case does not depend on the identity of the plaintiffs, the Court sees no reason not to permit Individual Plaintiffs to designate Dr. Nye as their loss causation expert. As the Court stated in its March 31, 2009 Opinion, to prove loss causation, plaintiffs must proffer evidence tending to show "a connection between the alleged false or misleading statements and one or more events disclosing the truth concealed by that fraud, and a connection between these events and actual share price declines." To satisfy this standard, Dr. Nye need not mention a single Individual Plaintiff by name when he takes the

13

stand.  Nothing in Dr. Nye's testimony concerning loss causation—or, for that matter, materiality and market efficiency—will cover subjects that defendants have not already developed when they cross-examined Dr. Nye in his deposition.  Not only is no additional discovery required if Dr. Nye provides evidence of loss causation on behalf of Individual Plaintiffs, no additional trial testimony is necessary.  Accordingly, the Court concludes that permitting Individual Plaintiffs to designate Dr. Nye as their loss causation expert and to use his testimony at trial does not violate Rule 37(c)(1) of the Federal Rules of Civil Procedure because the switch will be harmless.

As for Mr. Torchio, the Court concludes that defendants will not suffer significant prejudice if Mr. Torchio is permitted to recalculate Individual Plaintiffs' damages based on Dr. Nye's inflation line because the Court will not be trying the question of Individual Plaintiffs' damages at the upcoming trial scheduled to begin on September 29, 2009.  Further, at the July 20, 2009 oral argument, the Court would like the parties to readdress the question of whether trial of Individual Plaintiffs' claims with the Class's claims remains manageable.

## XI.     Defendant's Request to Exclude Deposition Designations for Certain Deponents

By letter dated May 22, 2009, defendants requested that certain of plaintiffs' deposition designations be stricken, or, in the alternative, for an extension of time to June 12, 2009 to serve counter-designations on plaintiffs for those same designations.  Defendants argue that designations of 55 deponents put forward by Individual Plaintiffs should be stricken because all 55 deponents lacked personal knowledge of the subjects on which they testified.  Without personal knowledge, these deponents' testimony would be inadmissible hearsay and therefore violative of Rule 32 of the Federal Rules of Civil Procedure.  Defendants also argue that designations of 8 deponents put forward by Class Plaintiffs should be stricken because the

14

deponents do not qualify as "unavailable" under Rule 32.  Individual Plaintiffs respond that the Court cannot possibly determine whether each and every designation from 55 deponents constitutes inadmissible hearsay, and that defendants' "broad-brush arguments" are an attempt to evade this Court's scheduling order providing for specific objections to be filed on July 15, 2009.  Class Plaintiffs respond that they made their designations out of an abundance of caution in case any of their 8 deponents become unavailable at the time of trial.

The Court agrees with plaintiffs that exclusion of the designations at issue is premature.  It would not be appropriate to exclude designations for 55 deponents without even reading them, and whether or not a witness is unavailable within the definition of Rule 32 is an issue for trial.  However, the Court takes seriously defendants' more general point that Individual Plaintiffs are potentially seeking to prove the elements of their case without ever producing a live witness.  The Court cautions Individual Plaintiffs that, should they wish to take advantage of Rule 32's provision that a witness is unavailable when the witness is "outside the United States", this same provision disqualifies such witnesses when "the witness's absence was procured by the party offering the deposition."

In light of the volume of designations made the plaintiffs, the Court retroactively grants defendants' request to modify the schedule, extending defendants' time to submit counter-designations to June 12, 2009.  While defendants should still submit their designations and counter-designations to the Court on June 30, 2009, plaintiffs may defer submission of their designations and counter-designations to July 6, 2009.  All other dates in the Court's schedule are not disturbed by this order.

## CONCLUSION

For the reasons stated above, (1) Individual Plaintiffs' Motion for Reconsideration of the Order Granting Defendant Guillaume Hannezo's Motion to Dismiss [756] is DENIED; (2) Individual Plaintiffs' Motion to Lift Stay [772] is GRANTED; (3) Individual Plaintiffs' Motion for Leave to Amend Complaints [781] is GRANTED except with respect to WSV; (4) plaintiff GAMCO's Motion for Leave to File an Amended Complaint and for Nine Mutual Funds to be Joined as Additional Plaintiffs [783] is GRANTED with respect to GAMCO's motion to amend and DENIED with respect to the Funds' motion for joinder; (5) defendants Messier and Vivendi's Cross-Motion to Dismiss with Prejudice WSV's Action [794] is GRANTED; (6) Ernst & Young's Motion for Reconsideration of this Court's Memorandum Opinion and Order, Dated May 28, 2009 [856] is DENIED; (7) GAMCO's Motion to strike the Expert Report of John W. Peavy, III is DENIED; (8) defendants' objections to the order issued by Magistrate Judge Pitman on August 15, 2006 are DENIED; (9) defendants' objections to the order issued by Magistrate Judge Pitman on January 30, 2009 are GRANTED; (10) Individual Plaintiffs' request to substitute Dr. Blaine Nye for Mr. Frank Torchio as their causation and damages expert is modified and as modified GRANTED; and (11) defendant's request to exclude deposition designations for certain deponents is DENIED.

SO ORDERED.

Dated: New York, New York
July 1, 2009

Richard J. Holwell
United States District Judge