UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE VIVENDI UNIVERSAL, S.A. SECURITIES LITIGATION | No. 02 Civ. 5571 (RJH) (HBP) |

This Document Relates to:

| 02 Civ. 5571 | 07 Civ. 9229 | 08 Civ. 0116 |
|---|---|---|
| 07 Civ. 5742 | 07 Civ. 9593 | 08 Civ. 0117 |
| 07 Civ. 7370 | 07 Civ. 10578 | 08 Civ. 1938 |
| 07 Civ. 7775 | 07 Civ. 10954 | 08 Civ. 1985 |
| 07 Civ. 7776 | 07 Civ. 10995 | 08 Civ. 0418 |
| 07 Civ. 7778 | 07 Civ. 11092 | 08 Civ. 0950 |
| 07 Civ. 7779 | 07 Civ. 11305 | 08 Civ. 1111 |
| 07 Civ. 7803 | 07 Civ. 11483 | 08 Civ. 1973 |
| 07 Civ. 7863 | 07 Civ. 11484 | 08 Civ. 1974 |
| 07 Civ. 8156 | 07 Civ. 11485 | 08 Civ. 1975 |
| 07 Civ. 8208 | 07 Civ. 11628 | 08 Civ. 1983 |
| 07 Civ. 8830 | 08 Civ. 0024 | |

## INDIVIDUAL PLAINTIFFS' PRETRIAL MEMORANDUM

**MOTLEY RICE LLC**
20 Church Street, 17th Floor
Hartford, CT 06103
(860) 882-1681

– and –

**CAPLIN & DRYSDALE, CHARTERED**
One Thomas Circle, NW
Washington, DC 20005
(202)862-5000

*Attorneys for Plaintiffs in Nos. 02 Civ. 5571, 07 Civ. 8830, 07 Civ. 10578, 07 Civ. 10954, 07 Civ. 11628, 08 Civ. 0950, 08 Civ. 1111, 08 Civ. 01983, 09 Civ. 2611*

**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706

*Attorneys for Plaintiffs in Nos. 07 Civ. 8156, 07 Civ. 9229, 07 Civ. 11092, 08 Civ. 01973, 08 Civ. 01974, 08 Civ. 01975, 09 Civ. 2592*

**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
(646) 722-8500

*Attorneys for Plaintiffs in Nos. 07 Civ. 7370, 07 Civ. 7775, 07 Civ. 7776, 07 Civ. 7778, 08 Civ. 7779, 07 Civ. 7803, 07 Civ. 7863, 07 Civ. 8208, 07 Civ. 9593, 07 Civ. 11485, 08 Civ. 0024, 08 Civ. 0116, 08 Civ. 0117, 08 Civ. 1938, 08 Civ. 01985, 09 Civ. 2603*

**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
(212) 907-0700

*Attorneys for Plaintiffs in Nos. 07 Civ. 5742, 07 Civ. 10995, 07 Civ. 11305, 07 Civ. 11483, 07 Civ. 11484, 08 Civ. 0418, 08 Civ. 2166, 08 Civ. 2057, 08 Civ. 2058, 08 Civ. 2056, 08 Civ. 2214, 09 Civ. 2568*

July 17, 2009

332709

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

STRUCTURE OF THE CASE ................................................................................. 2

*Elements of Securities Fraud Claims* ................................................................. 2

*Individual Plaintiffs' Case-in-Chief is, in Most Respects, the Same as Class Plaintiffs'* ... 3

*Presumption of Reliance* .................................................................................... 4

*Proof of Purchases / Standing* ........................................................................... 5

ARGUMENT .......................................................................................................... 7

I.   INDIVIDUAL PLAINTIFFS ARE ENTITLED TO THE FRAUD-ON-THE-MARKET PRESUMPTION, AND DEFENDANTS SHOULD BE PRECLUDED FROM INTRODUCING IRRELEVANT EVIDENCE IN AN ATTEMPT TO REBUT THE PRESUMPTION ............................................................................. 7

    A.   To Rebut the Presumption, Defendants Must Show that Plaintiffs Knew of the Fraud and Purchased Vivendi Securities at the Market Price Regardless .. 9

    B.   The Evidence Defendants Propose to Introduce Cannot, as a Matter of Law, Rebut the Presumption, and Thus Such Evidence is Irrelevant and Inadmissible ................................................................................................ 11

II.   A SEPARATE PROCEEDING ON INDIVIDUALIZED DAMAGE ISSUES IS APPROPRIATE AND WOULD BE THE MOST EFFICIENT USE OF JUDICIAL RESOURCES ....................................................................................... 16

III.   ANY CHALLENGES TO INDIVIDUAL PLAINTIFFS' STANDING SHOULD BE RESOLVED BEFORE TRIAL ............................................................... 19

    A.   Standing Implicates the Court's Subject Matter Jurisdiction, and Should be Determined by the Court Before the Jury Trial ................................... 22

    B.   Plaintiffs Whose Standing Was Not Challenged Previously Should be Permitted to Amend Their Complaints to Allege Recently-Obtained Assignments ................................................................................................ 26

    C.   Individual Plaintiffs Are Not Pursuing Claims for Any "New" Funds ............ 27

CONCLUSION ....................................................................................................... 28

## TABLE OF AUTHORITIES

Page

*Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
    436 F.3d 82 (2d Cir. 2006) ....................................................... 19, 22, 24

*Arthur Young & Co. v. U.S. Dist. Court*, 549 F.2d 686 (9th Cir. 1977) ..................... 17, 18

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ..................................................... *passim*

*Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537 (8th Cir. 1977) ................................ 18

*In re Bendectin Litig.*, 857 F.2d 290 (6th Cir. 1988) ............................................. 17, 18

*Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020 (2d Cir. 1993) ................................. 13

*Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113 (S.D.N.Y. 2001) ................................. 12, 13

*CutCo Indus., Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986) ..................................... 24

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) .................................................. 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147 (S.D.N.Y 2007) .......... 13, 14

*Gibbs v. Buck*, 307 U.S. 66 (1939) .................................................................... 24

*Green v. Wolf Corp.*, 406 F.2d 291 (2d. Cir. 1968) .................................................. 17

*Gross v. Weingarten*, 217 F.3d 208 (4th Cir. 2000) .................................................. 18

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) ....... 22, 24

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ....................................... 14

*Home Depot U.S.A. v. G & S Investors/Willow Park, L.P.*, No. 98-CV-6719 (TCP)
    (ARL), 2005 U.S. Dist. LEXIS 28669 (E.D.N.Y. Nov. 7, 2005) .................... 10

*Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117 (7th Cir. 1999) ....................... 18

*In re ICN/Viratek Sec. Litig.*, No. 87 Civ. 4296 (KMW), 1996 WL 34448146
    (S.D.N.Y. July 15, 1996) ...................................................................... 17, 18

*Katsaros v. Cody*, 744 F.2d 270 (2d Cir. 1984) ...................................................... 17

*LaFleur v. Whitman*, 300 F.3d 256 (2d Cir. 2002) ....................................................... 23

*In re Master Key Antitrust Litig.*, 528 F.2d 5 (2d Cir. 1975) ........................................ 17

*Michaels v. Ambassador Group Inc.*, 110 F.R.D. 84 (E.D.N.Y. 1986) ............................ 14

*New York Pub. Interest Research Group v. Whitman*, 321 F.3d 316 (2d Cir. 2003) ............ 23

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) ............... 17, 18

*Roe v. Johnson*, 334 F. Supp. 2d 415 (S.D.N.Y. 2004) ........................................ 22,  23

*Rossano v. Blue Plate Foods, Inc.*, 314 F.2d 174 (5th Cir. 1963) ................................... 18

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ............................................. 23

*In re Safeguard Scientifics*, 216 F.R.D. 577 (E.D. Pa. 2003) ....................................... 15

*In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474 (2d Cir. 2008) .......................... 8

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) ......................................................... 21

*Simon v. Philip Morris Inc.*, 200 F.R.D. 21 (E.D.N.Y. 2001) ...................................... 18

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .............................. 22, 24, 25

*TVT Records v. Island Def Jam Music Group*,
     250 F. Supp. 2d 341 (S.D.N.Y. 2003) .................................................... 10

*In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76 (S.D.N.Y. 2007) ...................... 1

*In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570 (S.D.N.Y. 2009) .......... 19, 26

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
     549 F.3d 100 (2d Cir. 2008) ................................................................ 20

*Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW) (HBP),
     2009 WL 928297, (S.D.N.Y. March 18, 2009) ......................................... 24

*In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003) ......................... 14, 15

# STATUTES

15 U.S.C. § 78t(a) .................................................................................... 3

15 U.S.C. § 78j(b) ................................................................................... 3

17 C.F.R. § 230.405 ................................................................................ 3

17 C.F.R. § 240.10b-5 ............................................................................. 3

17 C.F.R. § 240.12b-2 ............................................................................. 3

Fed. R. Civ. P. 12 ............................................................................ *passim*

Fed. R. Civ. P. 17 ................................................................................. 27

Fed. R. Civ. P. 23 ................................................................................... 9

Fed. R. Civ. P. 42 ................................................................................. 17

Fed. R. Civ. P. 56 ................................................................................. 24

Fed. R. Evid. 402 ................................................................................. 12

Fed. R. Evid. 803(6) ............................................................................... 6

Fed. R. Evid. 902(12) .............................................................................. 6

# OTHER AUTHORITY

Judge Stanley Marcus et al., *Manual for Complex Litigation* § 31.8 (4th ed. 2008) ........ 18, 19

10 Charles Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure*
       § 2713 (3d ed. 2009) ........................................................................ 24

Individual Plaintiffs in the above-captioned actions (collectively, "Individual Plaintiffs") respectfully submit this pretrial memorandum.

## PRELIMINARY STATEMENT

Individual Plaintiffs are institutional investors who, on behalf of funds they or their assignors owned or managed, purchased Vivendi securities on public securities markets during the class period — as did members of the certified Class. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 108 (S.D.N.Y. 2007) (certifying class "consisting of all persons from the United States, France, England, and the Netherlands who purchased or otherwise acquired ordinary shares or American Depository Shares of Vivendi Universal, S.A. between October 30, 2000 and August 14, 2002"). The majority of Individual Plaintiffs, however, were excluded from the Class, at Defendants' behest, on the ground that foreign jurisdictions other than France, England and the Netherlands likely would not give preclusive effect to a judgment rendered in the Class Action. *See Vivendi*, 242 F.R.D. at 105-06. Individual Plaintiffs therefore commenced separate individual actions against Defendants in this Court, alleging violations of the federal securities laws.

The Court consolidated Individual Plaintiffs' actions with the Class Action for all purposes (again, at Defendants' behest) after discovery in the Class Action had already concluded. *See* Scheduling Order (January 7, 2008) (Dkt. No. 403) ¶ 3. To avoid delaying the Class Action, the Court ordered that Individual Plaintiffs were to be provided with the discovery that had already taken place in the Class Action, and were allowed only limited additional, non-duplicative discovery. *See id.* ¶¶ 5-8. Given this history, it is not surprising that, with few differences, Individual Plaintiffs have the same theories of liability as the Class,

and will rely on much the same evidence to prove their claims against Defendants.  Individual Plaintiffs respectfully submit this pretrial memorandum to address issues that are particular to Individual Plaintiffs' claims, and to explain how those issues can be resolved in the most efficient manner.

## STRUCTURE OF THE CASE

Individual Plaintiffs respectfully submit that a joint trial with the Class on common issues will be manageable, provided the Court agrees with the following:  Individual Plaintiffs' standing should be determined before trial; Individual Plaintiffs are entitled to the fraud-on-the-market presumption of reliance on the integrity of the market; the presumption can be rebutted only by a showing that Individual Plaintiffs were aware of the fraud and purchased shares at the market price regardless; and individual damages may be calculated in a separate proceeding.  Each of the issues is further discussed in the Argument section of this memorandum, below.

### *Elements of Securities Fraud Claims*

As the Court is aware, to establish Defendants' liability for securities fraud under Section 10b of the Exchange Act, Individual Plaintiffs must prove each of the following elements:

(1)    in connection with the purchase or sale of a security, the Defendants made an untrue statement of material fact or failed to state a material fact, which made what was said, under the circumstances, misleading;

(2)    Defendants acted with an intent to defraud or with reckless disregard for the truth (scienter);

(3)    Individual Plaintiffs relied on the alleged misrepresentation or omission; and

2

(4)     Individual Plaintiffs suffered damages as a result of the Defendants' conduct.

*See* 15 U.S.C. § 78j(b) (2009); 17 C.F.R. § 240.10b-5 (2009).[1]

In addition, to establish Individual Defendants Messier's and/or Hannezo's liability as "controlling persons" of Vivendi, Individual Plaintiffs must prove:

(1)     a primary violation by Vivendi, the controlled person;

(2)     control of Vivendi by Defendants Messier and/or Hannezo; and

(3)     that Messier and/or Hannezo were culpable participants in the fraud perpetrated by Vivendi.

*See* 15 U.S.C. § 78t(a) (2009); 17 C.F.R. § 230.405 (2009); 17 C.F.R. § 240.12b-2 (2009).

### Individual Plaintiffs' Case-in-Chief is, in Most Respects, the Same as Class Plaintiffs'

In most respects — other than the computation of individual damages, which Defendants agree may appropriately be done in a separate proceeding[2] — Individual Plaintiffs' case-in-chief is generally the same as that of the Class Plaintiffs.[3]   Individual Plaintiffs and Class Plaintiffs will rely on the same evidence to prove that Defendants made material

---

[1]   Individual Plaintiffs have asked Defendants to stipulate that the Defendants used, or caused to be used, means and instrumentalities of interstate commerce, as to which there can be no dispute.

[2]   *See* Memorandum of Law in Opposition to Individual Plaintiffs' Motion for a Separate Trial on Individualized Issues Relating to Damages, dated June 30, 2009 ("Def. Bifurcation Opp. Br."), at 6 ("Defendants acknowledge that it may be appropriate, in the event a jury finds one or more Defendants liable, to conduct a separate proceeding to determine the mechanical calculation of damages . . . .").

[3]   Individual Plaintiffs have also asserted claims under Sections 11 and 12 of the 1933 Securities Act, as well as claims that Messier and Hannezo are liable as controlling persons under Section 15 of the 1933 Act.  As those claims do not require proof of reliance or scienter, the evidence for those claims is, essentially, a subset of the evidence for the 1934 Exchange Act Section 10(b) claims.  Further, damages for the 1933 Act claims are calculated based on a statutory formula.

misrepresentations and omissions in connection with Plaintiffs' purchase of Vivendi securities, that Defendants acted with the requisite scienter, and that Defendants Messier and Hannezo were controlling persons of Vivendi.  Individual Plaintiffs will also rely on the same evidence as Class Plaintiffs (including the same expert witness, Dr. Blaine Nye) to establish loss causation for the Section 10(b) claims, by demonstrating that Defendants' misrepresentations and omissions artificially inflated the market price of Vivendi shares and that, as the truth was revealed to the market, the shares declined in price.

### *Presumption of Reliance*

Individual Plaintiffs and Class Plaintiffs both will establish their reliance on Defendants' fraudulent misstatements and omissions, or transaction causation, by invoking the fraud-on-the-market presumption established by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).  Individual Plaintiffs have demonstrated elsewhere that this Court should reject Defendants' contention that only the Class Plaintiffs are entitled to the presumption of reliance.[4]  *See* Part I, below.  Rather, because the market for Vivendi shares was efficient,[5] both Class Plaintiffs and Individual Plaintiffs alike are entitled to a presumption that they relied on Defendants' material misrepresentations and omissions when they purchased their shares. The presumption is sufficient to meet Plaintiffs' burden of persuasion, and demonstrate reliance.

---

[4]  *See* Individual Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Exclude Individual Plaintiffs' and GAMCO's Use of the Fraud-on-the-Market Presumption, dated June 30, 2007 ("Pl. FOTM Presumption Opp. Br.").

[5]  The efficiency of the market, which is the only necessary factual predicate for application of the fraud on-the-market presumption, will be established by the testimony of Plaintiffs' expert, Dr. Blaine Nye.  Vivendi has indicated that it will not contest market efficiency.

Individual Plaintiffs do not dispute that the fraud-on-the-market presumption of reliance is a rebuttable presumption.  In this case, however, there is no evidence in the record to rebut the presumption.  Defendants have not identified a single exhibit or designated any testimony that could, as a matter of law, demonstrate that any Individual Plaintiff did not rely on the integrity of the market when purchasing Vivendi shares at the market price.   Indeed, Defendants' memorandum in opposition to Individual Plaintiffs' *in limine* motion to preclude Defendants from offering evidence purporting to rebut the presumption of individualized reliance[6] is devoid of *any* evidence that would sever the link between Defendants' misrepresentations and omissions and the Individual Plaintiffs' decisions to purchase at the market price.  The evidence Defendants propose to introduce (such as evidence of investor sophistication), is irrelevant and inadmissible, and any effort to rebut the presumption of individualized reliance with such evidence would be fruitless and would serve only to confuse the jury.[7]  *See* Part I.B., below.

### Proof of Purchases / Standing

Finally, Defendants cannot dispute that Individual Plaintiffs or their funds purchased Vivendi shares during the relevant period.  Individual Plaintiffs are corporate entities and, as such, can present evidence (such as proof of the purchase of Vivendi securities, or of the legal relationship between the named Plaintiffs and their funds) only through testimony of non-party

---

[6]   *See* Defendants' Opposition to Individual Plaintiffs' Motion *in Limine* to Preclude Defendants From Arguing or Offering Evidence Purporting to Show that Individual Plaintiffs Did Not Rely on the Integrity of the Market, dated June 30, 2009 ("Def. Reliance Opp. Br.").

[7]   *See* Memorandum of Law in Support of Individual Plaintiffs' Motion for an Order *in Limine* to Preclude Defendants From Arguing or Offering Evidence Purporting to Show that *(Footnote continued on next page.)*

witnesses or through corporate records.  Individual Plaintiffs have listed as live witnesses a handful of employees of representative Plaintiffs.[8]  However, there is nothing in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, or caselaw that requires a corporate party to prove a particular fact through testimony of a witness if that fact can be established by a document (such as a self-authenticated business record) or by other means.  To prove their purchases of Vivendi securities, Individual Plaintiffs will introduce into evidence their trading records, which, as they are accompanied by appropriate declarations, are self-authenticated business records.[9]  These business records establish that each Individual Plaintiff or its funds purchased and sold Vivendi securities at the times and at the prices set forth in the records.

Defendants have made clear, however, that they intend to challenge Individual Plaintiffs' standing to pursue their claims, although there is no evidence in the record that could even cast any doubt on Individual Plaintiffs' standing, let alone support a determination that they lack standing.  As discussed in Part III, below, Individual Plaintiffs respectfully submit that any such challenges to standing — a threshold issue that implicates the Court's jurisdiction — should properly be determined by the Court before trial.  The vast bulk of the Individual Plaintiffs' proof of standing consists of documentary evidence, such as contracts or

---

*(Footnote continued from previous page.)*
Individual Plaintiffs Did Not Rely on the Integrity of the Market, dated June 2, 2009 ("Pl. Reliance Br.").

[8]     Individual Plaintiffs have each also provisionally designated a live witness to testify for standing purposes only, but respectfully submit that their testimony will not be necessary, as standing should be determined on the documentary record.

[9]     *See* Fed. R. Evid. 803(6) & 902(12).  Defendants have indicated that they intend to challenge the certifications and/or business records on various grounds.  Individual Plaintiffs respectfully request that this Court resolve any such challenges before trial.

assignments, which establishes the legal relationship between the Individual Plaintiffs and the funds on behalf of which they have sued.[10]   Defendants' contention that Individual Plaintiffs must present their voluminous proof of standing[11] to the jury at trial so that Defendants may "explore . . . inconsistencies at trial"[12] simply defies common sense:  there is no reason to have the jury hear evidence on standing, as that issue cannot be determined by the jury. Rather, it is for this Court alone to determine standing — and its own jurisdiction — before any issue on the merits is given to the jury.

## ARGUMENT

## I.   INDIVIDUAL PLAINTIFFS ARE ENTITLED TO THE FRAUD-ON-THE-MARKET PRESUMPTION, AND DEFENDANTS SHOULD BE PRECLUDED FROM INTRODUCING IRRELEVANT EVIDENCE IN AN ATTEMPT TO REBUT THE PRESUMPTION

There is no dispute that the market for Vivendi shares was efficient during the relevant period, and Defendants have agreed not to contest that point.[13]   Individual Plaintiffs are therefore entitled to the fraud-on-the-market presumption that they relied on Defendants' material misrepresentations and omissions when they purchased Vivendi securities.  *See Basic*

---

[10]   Individual Plaintiffs each have also provisionally designated certain deposition testimony by their 30(b)(6) witnesses, describing the legal relationship between particular Individual Plaintiffs and their funds.

[11]   The evidence of standing is voluminous (including more than 4,500 documents) because there are 84 Individual Plaintiffs, suing on behalf of thousands of funds.

[12]   Memorandum of Law in Opposition to Individual Plaintiffs' Motion for an Order In Limine Determining Standing, dated June 30, 2009 ("Def. Standing Opp. Br."), at 12.

[13]   *See* Memorandum of Law in Opposition to Plaintiffs' Motion In Limine to Preclude Defendants From Arguing or Offering Evidence Purportedly Showing That Vivendi Securities Did Not Trade in An Efficient Market During the Relevant Time Period, dated June 30, 2009, at 2 ("Defendants agree not to argue or offer evidence for the purpose of 'showing that Vivendi securities did not trade in an efficient market during the Relevant Period'.").

*Inc. v. Levinson*, 485 U.S. 224, 245 (1988); *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 481 (2d Cir. 2008).   As demonstrated elsewhere,[14] this Court should reject Defendants' contentions that Individual Plaintiffs are not entitled to the presumption of reliance because they are "sophisticated investors" who conducted their own investigations of Vivendi, and did not believe that the market price for Vivendi shares accurately reflected the value of the Company.   All investors who trade on well-developed impersonal markets are entitled to rely on the integrity of the market and the integrity of the price set by the market, which incorporates all publicly available information.   That an investor believes the market has undervalued securities does not mean that the investor does not rely on the integrity of the market in purchasing the securities: there is a fundamental difference between a belief that a security is undervalued by the market, and a belief that it is undervalued because of a fraud that has been perpetrated on the market.[15]   As discussed below, Defendants must prove the latter to rebut the presumption.

Nor is there any support for Defendants' contention that the presumption is available only to plaintiffs who are pursuing their claims in a class action under Fed. R. Civ. P. 23.   As the Supreme Court established in *Basic*, all investors who trade on an efficient market do so "in reliance on the integrity of that price" set by the market, and thus reliance on any public material misrepresentations "may be presumed for purposes of a Rule 10b-5 action."   *Basic*, 485 U.S. at 247.   Nothing in the Court's opinion can fairly be read to suggest — and no court

---

[14]   *See* Pl. FOTM Presumption Opp. Br. at 8-13.

[15]   *See id.*

has ever ruled — that the presumption applies only in class actions.[16]   The presumption of reliance is a matter of substantive federal securities law, applicable to all purchasers in the market; it is not, as Defendants argue, merely a "class action procedural device" adopted to obviate problems of proving individualized reliance in class actions.   If it were, the presumption would be available to a sophisticated investor who had done its own analysis of Vivendi shares and decided they were undervalued by the market, if that investor were the lead plaintiff in a class action, but would not be available to the same investor in an individual action.   Fed. R. Civ. P. 23, which governs class actions, cannot be read as having such a substantive impact on the rights of securities plaintiffs, and nothing in the Court's decision in *Basic* suggests that it does.[17]

### A.   To Rebut the Presumption, Defendants Must Show that Plaintiffs Knew of the Fraud and Purchased Vivendi Securities at the Market Price Regardless

The fraud-on-the-market presumption has two parts:   a presumption that Defendants' misrepresentations and omissions affected the market price, and a presumption that investors who purchased at the market price relied on the integrity of the market and thus, indirectly, on defendants' misrepresentations.[18]   Individual Plaintiffs do not contend that the presumption is "conclusive," and do not dispute that the presumption is rebuttable.[19]   Indeed, Plaintiffs expect that Defendants may attempt to show that the market makers were privy to the truth, and thus the market price was not affected by any alleged misrepresentations.   In their motion *in limine*

---

[16]   *See* Pl. FOTM Presumption Opp. Br. at 5-7.

[17]   *See id*. at 13–18.

[18]   *See* Pl. Reliance Br. at 1-2; *see also Basic*, 485 U.S. at 245.

[19]   *See* Def. Reliance Opp. Br. at 3.

to preclude Defendants from introducing certain evidence regarding reliance, Individual Plaintiffs have not sought to preclude Defendants from introducing any relevant evidence purporting to "sever[] the link between the alleged misrepresentation and . . . the price received (or paid) by the [Plaintiffs] . . . ." *Basic*, 485 U.S. at 248. [20]   Nor are Plaintiffs seeking to usurp the jury's role as fact-finder, or seeking summary judgment. [21]   Rather, Individual Plaintiffs assert only that Defendants should not be permitted to introduce irrelevant evidence in an attempt to rebut the presumption of individualized reliance (*i.e.*, the causal connection between the fraud and Plaintiffs' decisions to purchase at market price). [22]

To rebut the presumption of individualized reliance, Defendants must make a "showing that severs the link between the alleged misrepresentation" and a Plaintiff's decision to purchase at market price. *Basic*, 485 U.S. at 248.  That is, Defendants must show that a particular Plaintiff had grounds to believe that the market price had been manipulated by Defendants' fraud, but purchased the shares regardless. *Id.* at 249.  (Contrary to Defendants'

---

[20]   Defendants' contentions that Plaintiffs attempt to use their motion *in limine* as a substitute for trial is a mischaracterization, and the cases Defendants rely on are inapposite. *See* Def. Reliance Opp. Br. at 2-3, citing *TVT Records v. The Island Def Jam Music Group*, 250 F. Supp. 2d 341 (S.D.N.Y. 2003) and *Home Depot U.S.A. v. G & S Investors/Willow Park, L.P.*, No. 98-CV-6719 (TCP) (ARL), 2005 U.S. Dist. LEXIS 28669 (E.D.N.Y. Nov. 7, 2005).  In *Home Depot U.S.A*, the Court was primarily concerned with the prematurity of *in limine* motions as they were brought at an "early stage of the case" and were not "placed in the appropriate factual context." 2005 U.S. Dist. LEXIS 28669, at *30. *See also id.* at *32.  Similarly, in *TVT Records*, the District Court noted that certain of the *in limine* motions were "out of context" and the Court could not determine the relevancy on the record before it. *See, e.g.*, *TVT Records*, 250 F. Supp. 2d at 344-47.  Plaintiffs' motion does not suffer from the same infirmities:  it seeks only to preclude evidence that is irrelevant to rebuttal of the presumption of reliance, and thus inadmissible on that issue.

[21]   *See* Def. Reliance Opp. Br. at 6-7.

[22]   *See* Pl. Reliance Br. at 2-3.

assertion, this is the **only** scenario set out by the Court in *Basic* that would warrant a finding that the presumption was rebutted.)[23]   Such evidence is rare, however — for "[w]ho would knowingly roll the dice in a crooked crap game?"  *Basic*, 485 U.S. at 247.  As the Court in *Basic* recognized, it is difficult to imagine that anyone would purchase shares at a price he knew to be inflated, unless he were compelled to do so "because of other unrelated concerns, *e.g.*, potential antitrust problems, or political pressures . . . ."  *Id.* at 249.

**B.    The Evidence Defendants Propose to Introduce Cannot, as a Matter of Law, Rebut the Presumption, and Thus Such Evidence is Irrelevant and Inadmissible**

Here, there is no evidence in the record that any Plaintiffs knew of Defendants' fraud, or had any reason to purchase the shares despite such knowledge, and Defendants do not contend that they will seek to introduce any such evidence.  Rather, Defendants propose to rebut the presumption by introducing evidence that Individual Plaintiffs are "sophisticated investors"; that certain Plaintiffs "performed their own analysis and assessments of Vivendi's value," and some of them "disagreed with the market assessment" of Vivendi's value; and that certain Plaintiffs purchased Vivendi shares following "public disclosures of negative

---

[23]   *See* Def. Reliance Opp. Br. at 7.  Defendants assert that, while proving a Plaintiff knew of the fraud and nevertheless purchased shares is "one potential way" to rebut the fraud on the market presumption, it is "not the only way"; that the Court in *Basic* "provided a list of several different scenarios that would warrant a finding that defendants rebutted this presumption."  Def. Reliance Opp. Br. at 7, citing *Basic*, 485 U.S. at 248-49.  But the presumption has two parts (a presumption that the fraud affected the market price, and a presumption that the plaintiff relied on the integrity of the market in purchasing shares).  The other scenarios described in *Basic* (*i.e.*, showing that the market makers were privy to the truth, or that the truth had credibly entered the market, and thus the fraud had no effect on market price) are ways to rebut the presumption that Defendants' fraud affected the market price.  They are not ways to rebut the presumption of individualized reliance at issue here.

information regarding Vivendi's liquidity."[24]   As a matter of law, however, none of these facts, if proven, would be sufficient to rebut the presumption (nor are they grounds to prevent Plaintiffs from invoking the presumption, as discussed above).   Thus, any evidence to prove such facts is irrelevant to the question of individualized reliance, and therefore is not admissible.   *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."). Indeed, if Defendants were permitted to introduce such evidence, the jury would have to be instructed that it could not find, on the basis of such evidence, that the presumption of reliance was rebutted.[25]   Thus, introducing the evidence would result only in needless jury confusion.

Individual Plaintiffs already have demonstrated that the presumption of reliance cannot be rebutted by a showing that Individual Plaintiffs are "sophisticated investors," as the law is well-established that investor sophistication has no relevance to a presumption grounded in the fraud-on-the-market theory.[26]   In support of their contention that they should be permitted to introduce evidence of investor sophistication to rebut the fraud-on-the-market presumption, Defendants rely entirely on the *Cromer* decision.   *See* Def. Reliance Opp. Br. at 9, citing *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113 (S.D.N.Y. 2001).   But *Cromer* is inapposite, as that case did not involve securities traded on an efficient market, and the decision did not address the manner in which the fraud-on-the-market presumption may be rebutted.[27]   Further,

---

[24]   Def. Reliance Opp. Br. at 8-9.

[25]   If Defendants are allowed to introduce such evidence, Individual Plaintiffs request that they be allowed to amend their proposed jury instructions accordingly.

[26]   *See* Pl. Reliance Br. at 5-8.

[27]   *Cromer*, a class certification case, involved claims arising from a fund's auditors' certification of net asset value ("NAV") statements that contained false and fraudulent information.  205 F.R.D. at 118.  The auditors contested the plaintiffs' motion for certification *(Footnote continued on next page.)*

in discussing the relevance of investor sophistication, the *Cromer* court cites *Brown v. E.F. Hutton Group, Inc.*, a case that involved allegations of direct reliance on a prospectus, in which the court noted that investor sophistication is a factor that may be considered in determining whether such direct reliance was justified.  991 F.2d 1020, 1032 (2d Cir. 1993).

Investor sophistication is relevant to a defense of non-reliance when a plaintiff alleges direct reliance, as a sophisticated investor cannot claim justified reliance on a misrepresentation that might dupe only a naïve investor.  *See, e.g., Brown*, 991 F.2d at 1032.  But investor sophistication simply is not relevant where, as here, the plaintiff relies on the fraud-on-the-market presumption of *indirect* reliance.  *Cf. Basic*, 485 U.S. at 241-42 ("Misleading statements [which are reflected in the market price of securities] will . . . defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.") (internal citation omitted).  Thus, in *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, the court found that "[a]lthough . . . when direct reliance is alleged in a complaint, the plaintiffs' investment sophistication is relevant to that issue," the plaintiff's sophistication is irrelevant where reliance is established by the fraud-on-the-market presumption.   245 F.R.D. 147, 164 (S.D.N.Y

---

*(Footnote continued from previous page.)*
on, *inter alia*, the grounds that individualized issues would predominate because each investor was required to produce individual reliance.  *Id*. at 119.  The plaintiffs argued that, even though the fund shares did not trade in an efficient market, they were entitled to a "presumption of reliance on the integrity of the price reflected in the NAV statements, and confirmed by [the auditor's] audits," analogous to the fraud-on-the-market presumption.  *Id*. at 128.  Noting that the "NAV statements *were* the price per share, and [the auditor's] audits were an explicit confirmation of the process for calculating that price," the court held that the "investors were entitled" to a presumption that they relied on the integrity of the audits of the NAVs.  *Id*. at 130-31 (emphasis added).

2007).[28]   If the market as a whole has been fooled by Defendants' fraud, all investors are deceived, sophisticated and unsophisticated alike.  *See, e.g.*, *Michaels v. Ambassador Group Inc.*, 110 F.R.D. 84, 89 (E.D.N.Y. 1986) ("If the defendants perpetrated a fraud on the market, then even the most sophisticated investor would be deceived.").

Individual Plaintiffs also have already demonstrated that the presumption of reliance cannot be rebutted by a showing that certain Plaintiffs performed their own analyses of the value of Vivendi stock, or that some of them may have disagreed with the market assessment of Vivendi's value.[29]  Such a showing cannot, as Defendants assert, demonstrate that Plaintiffs purchased their shares on the market "without relying on the integrity of the market."[30] Indeed, the court in *Worldcom* "swiftly rejected" the same arguments presented by the defendants in that case, as there was "no suggestion" that the proposed lead plaintiffs "had access to non-public information and learned that there was a fraud afoot and decided nonetheless to invest . . . ."  *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 281-82 (S.D.N.Y. 2003).  Thus, the court held, none of these arguments could defeat the presumption

---

[28]   Although the *Flag Telecom* and *WorldCom* cases involved class certifications, (*see* Def. Reliance Opp. Br. at 9-10) "their reasoning is equally applicable to determining whether a sophisticated investor is entitled to rely on the fraud-on-the-market theory."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 506 n.6 (9th Cir. 1992) (discussing class certification cases).  At the class certification stage, the issue is whether a proposed lead plaintiff's claims are "typical" of those of the class, and whether the plaintiff will adequately represent the class. The court will find that the plaintiff is not typical or adequate if he is subject to a unique defense that threatens to become the focus of the litigation, without even addressing the merits of a defense.  Thus, the courts' rulings in *Flag Telecom* and *WorldCom* — that a rebuttal defense based on investor sophistication is not a "unique defense" sufficient to defeat typicality and adequacy — necessarily imply that the defense is meritless on its face and cannot rebut the presumption in a fraud-in-the-market case.

[29]   *See* Pl. Reliance Br. at 5-8.

[30]   Def. Reliance Opp. Br. at 8, citing *Basic*, 485 U.S. at 249.

of reliance on the defendants' public misstatements.  *See id.* at 282.  This Court should do the same here.

The Court should also reject Defendants' argument that they can rebut the presumption of reliance with respect to certain Plaintiffs by showing that those Plaintiffs purchased Vivendi securities after public disclosures of negative information concerning Vivendi's liquidity position.   These purchases, Defendants assert, "arguably demonstrate[]" that Individual Plaintiffs would have purchased Vivendi securities (at an artificially inflated market price) even if they had known of the fraud (and thus knew that the price was artificially inflated).[31]   This assertion defies common sense.   When negative information about Vivendi's liquidity was revealed to the market, the market price of Vivendi shares declined.   That a Plaintiff was willing to buy the shares at a lower price that reflected the negative information does not "arguably demonstrate" that the Plaintiff would have purchased at the higher price even if it were aware that the price was artificially inflated by Defendants' fraudulently withholding the negative information from the market.   To illustrate: evidence that a consumer purchased a cubic zirconium ring for $100 does not "arguably demonstrate" that he would pay $1,000 for the same ring if it were represented to be a diamond, even if he believed that the representation

---

[31]   Def. Reliance Opp. Br. at 8.  The only case Defendants cite to support their position is a class certification decision by the Eastern District of Pennsylvania, which is inapposite.  *See* Def. Reliance Opp. Br. at 8, citing *In re Safeguard Scientifics*, 216 F.R.D. 577 (E.D. Pa. 2003).  In *Safeguard* the court held, *inter alia*, that a proposed lead plaintiff was not adequate or typical because it made purchases after the fraud was revealed, which, the defendant argued, subjected the plaintiff to a unique defense regarding reliance.  As the issue was class certification, the question before the court was not the validity of the defense, but only whether it "threaten[ed] to become the focus of litigation."  *Id.* at 581.  For the reasons stated above, this Court should reject any suggestion in that case that proof of purchases made at a lower *(Footnote continued on next page.)*

was false and that the ring was worth only $100. Defendants should not be permitted to argue or introduce evidence purporting to show that it does, as it would needlessly confuse the jury.

## II.   A SEPARATE PROCEEDING ON INDIVIDUALIZED DAMAGE ISSUES IS APPROPRIATE AND WOULD BE THE MOST EFFICIENT USE OF JUDICIAL RESOURCES

Individual Plaintiffs have asked this Court to hold a separate hearing on individualized issues relating to damages.[32]  Defendants have conceded that "it may be appropriate, in the event a jury finds one or more Defendants liable, to conduct a separate proceeding to determine the mechanical calculation of damages,"[33]  and the Court has indicated that it is inclined to do so.  *See* 4/6/2009 Hr'g Tr. 13:5-6.  The Court has also indicated that it is reluctant to try issues relating to reliance in a separate hearing from the common liability issues.  *See* 4/6/2009 Hr'g Tr. 12:2-3, 13:2-4.  As discussed above, it is Individual Plaintiffs' position that certain evidence that Defendants seek to introduce at trial to rebut the fraud-on-the-market presumption of reliance is irrelevant, and is therefore inadmissible.  *See* Part I, above.   In the event the Court disagrees with Individual Plaintiffs' position, and allows Defendants to introduce that evidence, Individual Plaintiffs respectfully request that the Court reconsider its position and address these issues in a separate proceeding with issues relating to damages, in order to avoid needlessly complicating the trial on issues common to the Class and Individual Plaintiffs.

---

*(Footnote continued from previous page.)*
market price after disclosure of a fraud will rebut the presumption of reliance on the integrity of a market price that was artificially inflated by fraud.

[32]   *See* Individual Plaintiffs' Memorandum of Law in Support of Their Motion for a Separate Trial on Individualized Issues Related to Damages ("Pl. Bifurcation Br.").

[33]   *See* Def. Bifurcation Opp. Br. at 6.

There is no constitutional roadblock to trying individualized reliance issues at a hearing separate from the hearing on common issues of liability.  Indeed, nothing in Fed. R. Civ. P. 42 or the Constitution mandates that each element of each Plaintiff's claim be decided in one trial, so long as no issues are readjudicated in the second trial.[34]  As  noted by the District Court in *In re ICN/Viratek Sec. Litig.*, No. 87 Civ. 4296 (KMW), 1996 WL 34448146 (S.D.N.Y. July 15, 1996), having a different jury hear issues in a second trial "has been held to be consonant with the Seventh Amendment jury trial right in cases where, as here, (1) the second jury will not be required to readjudicate any issues decided by the first, and (2) the issues are so distinct and separable that they may be separately tried without injustice to any party."  *Id.* at *2, citing *Arthur Young & Co. v. U.S. Dist. Court*, 549 F.2d 686, 697 (9th Cir. 1977); *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d. Cir. 1968).

Courts often hold separate trials on specific issues, even without the parties' consent. For example, in the *ICN/Viratek* case, the District Court considered a similar proposal, and held that "it is appropriate for defendants' attempts at rebutting the presumption of reliance with respect to individual investors to take place as a separate, Second Trial . . . ."  *In re ICN/Viratek Sec. Litig.*, 1996 WL 34448146, at *1; *see also In re Bendectin Litig.*, 857 F.2d

---

[34]   Fed. R. Civ. P. 42(b) grants the Court broad discretion to "order a separate trial of one or more separate **issues**, [or] claims . . . ."  (emphasis added).  *See, e.g., Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) ("The decision to bifurcate a trial into liability and damages phases . . . is 'firmly within the discretion of the trial court under Fed. R. Civ. P. 42(b).'") (quoting *In re Master Key Antitrust Litig.*, 528 F.2d 5, 14 (2d Cir. 1975)).  The Seventh Amendment to the Constitution prohibits reexamination of the same facts by successive juries; it does not prohibit trial of distinct issues by separate juries.  "Trying a bifurcated claim before separate juries does not run afoul of the Seventh Amendment, but a 'given [factual] issue may not be tried by different, successive juries.'"  *Robinson v. Metro-North Commuter R.R. Co.*, *(Footnote continued on next page.)*

290, 309 (6th Cir. 1988) (finding district court's order of separate trial on issue of causation, over objections, both permitted by Rule 42 and constitutional); *Simon v. Philip Morris Inc.*, 200 F.R.D. 21 (E.D.N.Y. 2001) (stating that courts may bifurcate liability and damages issues over objection of parties, and providing exhaustive analysis of court's authority to bifurcate).[35]

Indeed, courts regularly bifurcate liability and damages issues in complex securities fraud cases such as this one even though proof of damages ("economic loss") is as much an essential element of a securities fraud claim as proof of reliance is. *See In re ICN/Viratek Sec. Litig.*, 1996 WL 34448146, at *2, *4 (damages tried separately); *Gross v. Weingarten*, 217 F.3d 208, 215 (4th Cir. 2000) (same); *Arthur Young*, 549 F.2d at 696-97 (same). *See also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (damages is an element of the claim). *See generally* Pl. Bifurcation Br. at 2-3. And, as recognized in the *Manual for Complex Litigation*, it is also appropriate in such a case to try individualized issues separately. *See* Judge Stanley Marcus et al., *Manual for Complex Litigation* § 31.8 (4th ed. 2008) (noting that it may be appropriate to "consolidat[e] related cases for a joint trial on specified issues, such as the defendants' respective liabilities for alleged misrepresentations and omissions,

---

*(Footnote continued from previous page.)*
267 F.3d 147, 169 n.13 (2d Cir. 2001) (citation omitted); *see also Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1126 (7th Cir. 1999); Pl. Bifurcation Br. at 4-5.

[35]   *See also Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 541-42 (8th Cir. 1977) (holding that, in case involving claims for negligence and products liability against the manufacturer of a water slide, the district court did not abuse its discretion under Rule 42 by granting the defendants' motion for a separate trial on the issue of manufacture of the slide involved in the accident); *Rossano v. Blue Plate Foods, Inc.*, 314 F.2d 174, 176 (5th Cir. 1963) (upholding the district court's decision to try the issue of agency separately in a negligence case where plaintiff alleged liability under a theory of respondeat superior).

while leaving for subsequent separate trials other issues, *such as damages and individual defenses*.") (emphasis added).

## III.   ANY CHALLENGES TO INDIVIDUAL PLAINTIFFS' STANDING SHOULD BE RESOLVED BEFORE TRIAL

On August 15, 2008, Defendants moved for partial summary judgment, challenging the standing of certain Individual Plaintiffs to sue on behalf of their funds.[36]  After the Court ruled on that motion, Individual Plaintiffs (who had not — and still have not — been served with answers to their complaints, and thus did not know what defenses Defendants intend to assert) asked Defendants to stipulate that the Individual Plaintiffs were the real parties in interest, in light of the Court's ruling.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 575 (S.D.N.Y. 2009).  Defendants refused to stipulate, and have indicated that they intend to challenge the standing of all Individual Plaintiffs — even those whose standing Defendants already had unsuccessfully challenged in their summary judgment motion.[37]  (More recently, in their proposed pretrial order, Defendants have confirmed that they intend to assert a defense of lack of standing against all Individual Plaintiffs.)  Individual Plaintiffs, therefore, have asked the Court to determine, before trial, that they have standing to pursue their claims in this action.[38]

---

[36]   Although the "[p]roper procedural route" for a standing challenge is a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) (*see Alliance for Envtl. Renewal Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82 (2d Cir. 2006)), Defendants characterized their motion as a motion for summary judgment under Rule 56, (*see* Memorandum in Support of Defendants' Motion for Partial Summary Judgment Against Individual Plaintiffs for Lack of Standing, dated August 15, 2008), and the parties and the Court treated it as such.

[37]   *See* Memorandum of Law in Support of Individual Plaintiffs' Motion for an Order *in Limine* Determining Standing, dated June 2, 2009 ("Pl. Standing Br."), at 4.

[38]   *See* Pl. Standing Br.

Individual Plaintiffs have provided Defendants and the Court with voluminous documentary evidence of their standing, comprising mostly contracts, annual reports and similar documents that demonstrate their management relationship with their funds, as well as assignments from the owners of certain funds.[39] Defendants have not identified a single exhibit or designated any testimony that could demonstrate that any Individual Plaintiff does not have standing. Indeed, there is no such evidence in the record.

Defendants complain that it is "impossible" for them "to discern the adequacy of the record"[40] — even though Individual Plaintiffs have painstakingly identified the specific documents on which they rely to demonstrate their standing for each of their funds, and have provided proof of assignments where necessary. Defendants insist that they must be permitted to "explore . . . inconsistencies" in certain Plaintiffs' assertions regarding the basis of their standing,[41] and that the 84 Individual Plaintiffs must each produce live witnesses to testify, so

---

[39]   *See* Exhibits to the Declarations of Nathan D. Finch, James S. Sabella, Mark Arisohn and Benjamin J. Hinerfeld, accompanying Pl. Standing Br.

[40]   Def. Standing Opp. Br. at 12.

[41]   *Id*. There are 84 Individual Plaintiffs asserting claims for thousands of funds in these actions. The only "inconsistencies" Defendants cite concern assertions of standing by Plaintiff Metzler Ireland regarding five funds. Metzler Ireland has always maintained, and continues to maintain, that it had the authority to bring claims for the funds it manages (that purchased Vivendi shares during the Relevant Period) when it filed its lawsuit in the fall of 2007. In their motion for summary judgment filed in 2008, Defendants did not challenge Metzler Ireland's standing. Thereafter, *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) was decided, which changed the landscape on the issue of standing of asset managers to pursue claims for funds they manage. Therefore, in June 2009, when Individual Plaintiffs filed their affirmative motion for a determination of standing, Metzler Ireland (and all other previously unchallenged plaintiffs) garnered all its evidence that demonstrates that it has standing as a matter of law. Having been unable to locate and produce during discovery the trust deeds that document the authority granted to it to file the lawsuit in 2007, and in light of *Huff*, Metzler Ireland determined that, for the avoidance of doubt, it should document its authority by obtaining assignments from the five funds it manages that *(Footnote continued on next page.)*

that Defendants can "explore the veracity and credibility" of Plaintiffs' documentary evidence and assertions of standing.[42]  Further, Defendants contend that they should be allowed to drag the Court and the jury along on this spelunking expedition — during the trial on the merits of these consolidated actions.  Defendants cannot realistically expect to achieve anything this way, other than needlessly complicating the trial, confusing the jury, and prejudicing all Plaintiffs.  This the Court should not permit.

Despite having acknowledged previously that "'[t]he existence of standing is a question of law,' *Shain v. Ellison,* 356 F.3d 211, 214 (2d Cir. 2004), and is therefore a matter to be determined by a judge, not a jury,"[43] Defendants now maintain that standing issues should be determined at trial.[44]  But Defendants ignore controlling Supreme Court precedent that standing challenges should be determined by the judge alone before trial on the merits.  There is no compelling reason — and it would be an enormous waste of scarce judicial resources — to parade Individual Plaintiffs' voluminous documentary evidence of standing and dozens of live witnesses before the jury when (as Defendants themselves acknowledge) the Court alone

---

*(Footnote continued from previous page.)*

purchased Vivendi shares, and from the two investment companies that issued and own the funds.

[42]   Def. Standing Opp. Br. at 12 & n.16.  Defendants argue that live witnesses must testify to standing because many of Individual Plaintiffs' documents were produced after depositions of their 30(b)(6) witnesses.  But Plaintiffs did not seek to redepose those witnesses after the documents were produced.  Nor was there any reason to;  the documents produced after depositions were, typically, virtually identical to documents Defendants already had in their possession, such as copies of standard form contracts for additional funds.  *See* Individual Plaintiffs' Sur-Reply in Opposition to Defendants' Motion for Partial Summary Judgment Against Individual Plaintiffs for Lack of Standing, dated December 31, 2008, at 27-32.

[43]   Reply Memorandum in Further Support of Defendants' Motion for Partial Summary Judgment Against Individual Plaintiffs for Lack of Standing, dated December 12, 2008, at 7.

must determine the issue.  Individual Plaintiffs submit that there is no need for a hearing on the issue at all, as the Court can determine standing from the record.  If Defendants have specific challenges to Individual Plaintiffs' evidence, they should present them now, so that the Court may confirm it has jurisdiction to address the merits of Individual Plaintiffs' claims at trial.

**A.    Standing Implicates the Court's Subject Matter Jurisdiction, and Should be Determined by the Court Before the Jury Trial**

The Supreme Court and the Second Circuit have instructed that "a district court must generally resolve material factual disputes and establish that it has federal constitutional jurisdiction, including a determination that the plaintiff has Article III standing, before deciding a case on the merits." *Alliance*, 436 F.3d at 85*, citing Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).  Any litigation of standing issues should be before the judge alone, not during a jury trial on the merits.  As the Supreme Court put it, "any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone (as distinct from litigation of the same fact issue as an element of the cause of action, if the claim survives the jurisdictional objection)." [45]  *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537-38 (1995).

Ordinarily, issues of standing are raised when a defendant asserts a challenge to subject matter jurisdiction in a motion under Fed. R. Civ. P. 12(b)(1).  However, the Court has an independent "obligation to ensure that standing exists and should resolve questions of Article

---

*(Footnote continued from previous page.)*

[44]    Def. Standing Opp. Br. at 9-12.

[45]    In this case, as there is no overlap between jurisdictional fact issues and fact issues as elements of claims or defenses, the jury will never hear evidence concerning, or determine, those fact issues.

III jurisdiction before reaching the merits of a plaintiff's claim." *Roe v. Johnson*, 334 F. Supp. 2d 415, 420 (S.D.N.Y. 2004). *See also New York Pub. Interest Research Group v. Whitman,* 321 F.3d 316, 324-25 (2d Cir. 2003) ("[W]e have an independent obligation to ensure that standing exists."); *LaFleur v. Whitman,* 300 F.3d 256, 268 (2d Cir. 2002) (same); *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 583-584 (1999) (in order for federal courts to remain within the "bounds the Constitution and Congress have prescribed" and avoid issuing advisory opinions, "subject-matter delineations must be policed by the courts on their own initiative even at the highest level"). Further, Fed. R. Civ. P. 12(i) provides that any party may move the Court to have a defense of lack of subject matter jurisdiction determined before trial. *See* Fed. R. Civ. P. 12(i) ("If a party so moves, any defense listed in Rule 12(b)(1)-(7) — whether made in a pleading or by motion — . . . must be heard and decided before trial unless the court orders a deferral until trial.").

Here, Defendants have not yet served their answer, and thus have not yet formally asserted their defenses. However, they have now stated in their proposed pretrial order that they intend to assert a defense of lack of standing against all Individual Plaintiffs. Thus, Individual Plaintiffs ask that the Court consider the Individual Plaintiffs' Motion for an Order *In Limine* Determining Standing, filed on June 2, 2009,[46] a motion pursuant to Rule 12(i) to hear and decide Defendants' affirmative defense of lack of subject matter jurisdiction.

---

[46]   *See* Pl. Standing Br.

Defendants' complaints that this motion is procedurally improper[47] or an "untimely motion for partial summary judgment"[48] are therefore moot.

Here, there is no reason for the Court to defer the determination of standing until trial. As discussed below, there are no genuine issues of material fact, for Defendants point to no evidence to controvert standing. Nor is there any need for live witnesses to testify; the Court can determine standing on the evidentiary record. *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986) ("The district court may conduct such a hearing [under Rule 12(i) (formerly Rule 12(d))] based solely upon papers . . ."); *see also Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939) ("As there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court.") Further, the jurisdictional facts are completely separate from the merits of the claims. *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386 (KMW) (HBP), 2009 WL 928297, *3 (S.D.N.Y. March 18, 2009) ("Where, as here, the jurisdictional facts are sufficiently separable from the merits of a claim, they may be decided by a court."). Indeed, the Supreme Court has clearly instructed that a "comparatively summary procedure before a judge alone . . ." (*Grubart*, 513 U.S. at 537-38)

---

[47]   *See* Def. Standing Opp. Br. at 2-4.

[48]   Def. Standing Opp. Br. at 4.  Although motions concerning standing or other jurisdictional issues are decided in a "comparatively summary procedure before a judge alone," *Grubart,* 513 U.S. at 537-38, such motions are properly brought under Rule 12.  They are not, as Defendants assert, Rule 56 motions for summary judgment, even when affidavits and other evidence are presented in support.  *See Alliance,* 436 F.3d at 89 nn. 6-7.  Rule 56 permits motions for summary judgment on "all or part of the claim."  Fed. R. Civ. P. 56(a)-(b). Standing is not "part of the claim," but is, rather, a threshold jurisdictional matter.  A determination on summary judgment under Rule 56 is a determination on the merits, and such a determination cannot be made until jurisdiction has been established.  *See* 10 Charles Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 2713, text accompanying nn.44-57 (3d ed. 2009).

is precisely how the Court should determine any contested facts as to Plaintiffs' standing, which must be resolved before Plaintiffs' claims can go to the jury on the merits. *See Steel Co.*, 523 U.S. at 101 (a court can not "resolve contested questions of law when its jurisdiction is in doubt").

Delaying the determination of standing until trial would not promote judicial economy, as Defendants contend. Rather, as noted above, it would be an enormous waste of scarce judicial resources, and needlessly confusing to the jury, to have the jury sit through the presentation of evidence on an issue that must be determined by the Court, and could be determined on the documentary record. Judicial economy will best be served, and the trial process best aided, if the Court determines standing in a summary proceeding before the jury is seated.

Individual Plaintiffs already have demonstrated that there are no genuine issues of material facts as to standing. Defendants assert that there are such issues, but refuse to identify them, or to respond to Individual Plaintiffs' statements of fact.[49] Defendants should be required to immediately specify the Plaintiffs whose standing they challenge, and the bases for their challenges, or be deemed to have stipulated to Individual Plaintiffs' statements of facts.[50] After Individual Plaintiffs have been given an opportunity to respond to those challenges, and before trial begins, the Court should rule on standing.

---

[49]   *See* Def. Standing Opp. Br. at 4 n.6.

[50]   Defendants' arguments that to address standing now would be a "distraction from trial preparation" (Def. Standing Opp. Br. at 13) is belied by their assertion that they intend to challenge standing at trial. They can use the trial preparation time that would be devoted to standing challenges to specify their challenges now.

**B.      Plaintiffs Whose Standing Was Not Challenged Previously Should be Permitted to Amend Their Complaints to Allege Recently-Obtained Assignments**

In their motion for partial summary judgment, Defendants challenged the standing of 35 Individual Plaintiffs.   This Court granted the motion with respect to certain Plaintiffs with respect to certain of their funds, on the ground that they were not the real party in interest to sue for those funds, but granted those Plaintiffs thirty days to obtain assignments, or have the real parties in interest substitute as plaintiffs.   *Vivendi*, 605 F. Supp. 2d at 582-86.   Those Plaintiffs obtained assignments of claims for the relevant funds, and submitted proof of the assignments with their motion to amend their complaints.[51]   Certain Plaintiffs — whose standing had not been challenged — subsequently determined that they also required assignments to maintain their claims for certain funds, or decided to obtain assignments out of an abundance of caution, to pretermit any issue with respect to their standing.   In the motion for a determination of standing, those Plaintiffs submitted proof of those assignments (or informed the Court that such proof was forthcoming), and asked leave to further amend their complaints to allege the newly-obtained assignments.[52]

Defendants argue that these Plaintiffs should not be allowed to amend their complaints, as the assignments were obtained after April 30, 2009 — which, Defendants contend, was the "deadline" for all Plaintiffs submitting assignments, regardless of whether standing had been

---

[51]   *See* Individual Plaintiffs' Motion for Leave to Amend Complaints, dated April 30, 2009 (Dkt. No. 781), at 2-3.

[52]   Pl. Standing Br. at 18.   The Court already has granted Plaintiff KBC's request, and KBC has amended its complaint accordingly.   *See* Memorandum Opinion and Order (July 1, 2009) (Dkt. No. 890), at 4 n.4.

challenged with respect to a particular Plaintiff or fund.[53]  But any "deadline" in the Court's Standing Opinion did not apply to those Plaintiffs, as the question of whether they were the real parties in interest to assert the claims of their funds was not raised, and thus their standing with respect to those funds was not considered by the Court.[54]  Fed. R. Civ. P. 17 provides that the Court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Fed. R. Civ. P. 17(a)(3). Defendants did not object that these Plaintiffs were not the real parties in interest with respect to these funds until June 30, 2009, when they responded to Individual Plaintiffs' motion to determine standing, by which time the assignments had already been obtained.  Individual Plaintiffs ATP, Metzler, Monte Paschi, PKA, Robur, Swiss Life Asset Management, and Swiss Life Netherlands respectfully request, therefore, that they be allowed to amend their complaints to allege these assignments.

## C.    Individual Plaintiffs Are Not Pursuing Claims for Any "New" Funds

As discussed above, the most efficient use of judicial resources would be to have the Court determine standing in a summary proceeding on the record before trial, after Defendants specify any challenges they wish to make.   Any factual issues the Defendants wish to raise can be dealt with in the context of that proceeding.  Individual Plaintiffs will demonstrate in that

---

[53]    *See* Def. Standing Opp. Br. at 15-16.

[54]    *See* Pl. Standing Br. at 15-16.

proceeding that Defendants' complaints that Individual Plaintiffs have continuously amended the list of funds on behalf of which they assert claims are unfounded.[55]

## CONCLUSION

For the reasons set forth above, Individual Plaintiffs respectfully request that this Court determine Individual Plaintiffs' standing on the record before trial, order that Individual Plaintiffs are entitled to the fraud-on-the-market presumption of reliance on the integrity of the market, and that the evidence Defendants propose to introduce to rebut the presumption is irrelevant and inadmissible on that issue, and that individual damages may be calculated in a separate proceeding.

Dated:  July 17, 2009

Respectfully Submitted,

---

[55]   Individual Plaintiffs are compelled, however, to respond briefly to Defendants' allegations here.  The funds on behalf of which Individual Plaintiffs are asserting claims were identified more than eighteen months ago, in response to Defendants' interrogatories.  The only changes have resulted from Plaintiffs dropping claims for certain funds, and Defendants have been notified by letter when funds have been dropped.  Plaintiffs have not revived claims for dropped funds, or added claims for "new" funds.  DeAm is not asserting claims for six of the seven funds listed by Defendants as "new" DeAM funds, and those funds are not on the list of outstanding claims.  The remaining fund, STK, is on the list, and was included in the list of funds provided to Defendants in July of 2008.  The funds that Defendants claim Nordcon has "added" were identified in Nordcon's discovery responses.  Defendants were given the trading records for those funds during discovery, and Nordcon has never represented that it was dropping claims on behalf of these eight funds.  The damages calculations for those funds were inadvertently omitted from Mr. Torchio's original damages calculations, but that error has now been corrected.  Finally, with one exception, the AGIF and ILIM funds identified by Defendants should not be on the list of funds for which there are outstanding claims; Defendants are correct that claims for those funds were withdrawn.  The exception is AGIF Fund "1," which has elsewhere been identified as "PG IART," and has been listed throughout as a fund for which a claim is asserted.

**CAPLIN & DRYSDALE,
CHARTERED**

By:  /s/ Nathan D. Finch_____
Nathan D. Finch
Leslie M. Kelleher (LK-5943)
One Thomas Circle N.W.
Washington, D.C. 20005
(202) 862-5000

**MOTLEY RICE LLC**

William H. Narwold (WN-1713)
Michael E. Elsner (ME-8337)
20 Church Street, 17th Floor
Hartford, CT  06103
(860) 882-1681

*Attorneys for Plaintiffs in Nos. 07 Civ.
7370, 07 Civ. 7775, 07 Civ. 7776, 07 Civ.
7778, 07 Civ. 7779, 07 Civ. 7803, 07 Civ.
7863, 07 Civ. 8208, 07 Civ. 9593, 07 Civ.
11485, 08 Civ. 0024, 08 Civ. 0116, 08
Civ. 117, 08 Civ. 1938, 08 Civ. 01985, 09
Civ. 2603*

**BARROWAY TOPAZ KESSLER,
   MELTZER & CHECK LLP**

Stuart L. Berman
John A. Kehoe (JK-4589)
Benjamin J. Hinerfeld
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706

*Attorneys for Plaintiffs in Nos. 07 Civ. 8156, 07
Civ. 9229, 07 Civ. 11092, 08 Civ. 01973, 08
Civ. 01974, 08 Civ. 01975, 09 Civ. 2592*

**GRANT & EISENHOFER P.A.**

Stuart M. Grant (SG-8157)
James J. Sabella (JS-5454)
Diane Zilka (DZ-9452)
Christine M. Mackintosh
485 Lexington Avenue
New York, New York 10017
(646) 722-8500

*Attorneys for Plaintiffs in Nos. 02 Civ.5571, 07
Civ. 8830, 07 Civ. 10578, 07 Civ. 10954, 07
Civ. 11628, 08 Civ. 0950, 08 Civ. 1111, 08
Civ. 01983, 09 Civ. 2611*

**LABATON SUCHAROW LLP**

Mark S. Arisohn (MA-2364)
Jesse Strauss (JS-0212)
140 Broadway
New York, NY 10005
(212) 907-0700

*Attorneys for Plaintiffs in Nos. 07 Civ. 5742, 07
Civ. 10995, 07 Civ. 11305, 07 Civ. 11483, 07
Civ. 11484, 08 Civ. 0418, 08 Civ. 2166, 08
Civ. 2057, 08 Civ. 2058, 08 Civ. 2056, 08 Civ.
2214, 09 Civ. 2568*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 17, 2009, I caused to be filed electronically with the Clerk of the United States District Court for the Southern District of New York, by using the CM/ECF system, a true and correct copy of the foregoing INDIVIDUAL PLAINTIFFS' PRETRIAL MEMORANDUM.   Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.   Parties may access this filing through the Court's CM/ECF System.

_____
Michael C. Greene