UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE VIVENDI UNIVERSAL, S.A.
SECURITIES LITIGATION

Civil Action No. 02 Civ. 5571 (RJH/HBP)

## CLASS PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION FOR
## PRELIMINARY INJUNCTION

Arthur N. Abbey
Stephen T. Rodd
ABBEY SPANIER RODD & ABRAMS LLP
212 East 39th Street
New York, New York 10016
212.889.3700

*Lead Counsel for Class Plaintiffs*

Matthew Gluck
Michael C. Spencer
MILBERG LLP
One Pennsylvania Plaza
New York, New York 10119
212.594.5300

Brian C. Kerr
BROWNE WOODS GEORGE LLP
49 West 37th Street, 15th Floor
New York, New York 10018
212.354.4901

*Counsel for Class Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................ii-iii

I.  INTRODUCTION ..............................................................................................1

II.  BACKGROUND ................................................................................................2

    A.  Vivendi's Lawsuit Against the French Class Representatives ................................2

    B.  Commentary by Vivendi Representatives in the Press.............................3

    C.  Vivendi's Intervention in the Appeal from the "Nanterre" Proceedings
        Regarding Class Notice.................................................................................4

III.  ARGUMENT .....................................................................................................5

    A.  Plaintiffs Are Entitled to an Anti-Foreign-Suit Injunction ...................................5

        1.  The Threshold Requirements of *China Trade* Are Satisfied ......................7

        2.  The Discretionary *China Trade* Factors Also Favor
            an Injunction ...............................................................................................8

IV.  CONCLUSION..................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*China Trade & Dev. Corp. v. M.V. Choong Yong,*
    837 F.2d 33 (2d Cir. 1987)...................................................................................6, 8

*Ibeto Petrochemical Indus. Ltd. v. M/T Beffen,*
    475 F.3d 56 (2d Cir. 2007)........................................................................................6

*In re Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi
    Negara,* 465 F. Supp. 2d 283 (S.D.N.Y. 2006)...........................................................7

*Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
    500 F.3d 111 (2d Cir. 2007)...........................................................................6, 7, 8, 9

*Laker Airways Ltd. v. Sabena, Belgian World Airlines,*
    731 F.2d 909 (D.C. Cir. 1984)...............................................................................8, 9

*MasterCard Int'l, Inc. v. Argencard Sociedad Anonima,*
    No. 01 Civ. 3027 (JGK), 2002 WL 432379 (S.D.N.Y. Mar. 20, 2002) ...................7

*Motorola Credit Corp. v. Uzan,*
    No. 02 Civ. 666 (JSR), 2003 WL 56998 (S.D.N.Y. Jan. 7, 2003).........................6, 7

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.,*
    369 F.3d 645 (2d Cir. 2004)...................................................................................6, 8

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren,*
    361 F.3d 11 (1st Cir. 2004)................................................................... *passim*

*Software AG, Inc. v. Consist Software Solutions, Inc.,*
    No. 08 Civ. 389 (CM)(FM), 2008 U.S. Dist. LEXIS 19347 (S.D.N.Y. Feb. 21, 2008) .........11

*Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods.,*
    310 F.3d 118 (3d Cir. 2002)......................................................................................5

*Suchodolski Assocs., Inc. v. Cardell Fin. Corp.,*
    No. 04 Civ. 5732 (WHP), 2006 U.S. Dist. LEXIS 83169 (S.D.N.Y. Nov. 16, 2006) ...........11

*United States v. Davis,*
    767 F.2d 1025 (2d Cir. 1985).............................................................................9, 10

*In re Vivendi Universal, S.A., Sec. Litig.,*
    242 F.R.D. 76 (S.D.N.Y. 2007) ...............................................................................9

*In re Vivendi Universal, S.A., Sec. Litig.*,
    381 F. Supp. 2d 158 (S.D.N.Y. 2003)........................................................................9

*In re Vivendi Universal, S.A., Sec. Litig.*,
    No. 02 Civ. 5571 (RJH) (HBP), 2004 WL 2375830 (S.D.N.Y. Oct. 22, 2004) .......................9

**MISCELLANEOUS**

Restatement (Second) of Judgments § 27 (1982) ........................................................................8

## I.  INTRODUCTION

Class Plaintiffs respectfully submit this memorandum in support of their motion for entry of an injunction requiring defendant Vivendi Universal, S.A. (*Vivendi*) to withdraw the lawsuit it recently filed in Paris against the two class representatives from France in this case (Olivier Gerard and Gerard Morel).  Vivendi's lawsuit seeks to force Gerard and Morel "to abandon the class action" and to pay damages of €1,000,000, plus €50,000 for each day they fail to capitulate, plus other amounts.  Vivendi has explicitly acknowledged that it is deliberately seeking to force French share purchasers out of the certified class.  A copy of the papers commencing the action (without exhibits), and an English translation, are attached as Exhibit A to the accompanying Declaration of Olivia Vasilescu Palmer.  Plaintiffs are also filing separately an Affidavit of Gerard Morel.

*Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren,* 361 F.3d 11 (1st Cir. 2004) (copy attached as Exhibit B), provides direct precedent for the antisuit injunction requested by plaintiffs' motion.  *Quaak* was a securities fraud case in the District of Massachusetts involving a Belgian company.  KPMG, an auditor defendant, responded to a district court order directing production of its workpapers located in Belgium by suing the securities fraud plaintiffs in a court in Belgium, seeking to enjoin them from "taking any step" to proceed with the requested discovery, on paying of a fine of €1,000,000 if they violated the injunction.  On motion by the plaintiffs, the District of Massachusetts issued an international antisuit injunction prohibiting KPMG from continuing with its lawsuit in Belgium and ordering it to "withdraw forthwith" its writ.  The First Circuit affirmed, noting that KPMG had instituted "a foreign action in a blatant attempt to evade the rightful authority of the forum court" -- which intolerably would have prevented the district court from "preserv[ing] its ability to do justice between the parties in cases that are legitimately before it." *Id.* at 20.

Because Vivendi's lawsuit in France likewise deliberately threatens the French class representatives' ability to carry out their responsibilities in this case, the Court should require Vivendi to withdraw its lawsuit.

## II.   BACKGROUND

### A.   Vivendi's Lawsuit Against the French Class Representatives

Vivendi filed its lawsuit (the *Paris Action*) last Thursday in the *Tribunal de Grande Instance* in Paris, naming as defendants Gerard, Morel, and l'ADAM, a French shareholders association. Gerard and Morel were served the same day. The lawsuit claims that the US class action is "artificial and abusive" (p. 3) and "fictitious and therefore fraudulent" and an "abuse of forum shopping" (p. 6) due to its inclusion of French share purchasers in the class. The papers go on to summarize the arguments Vivendi has unsuccessfully made to this Court concerning the propriety of including French shareholders in the class (pp. 7-9).

Vivendi seeks a damages award jointly against Gerard and Morel (p. 9) derived from its defense costs in the US action (€1,000,000) (p. 10); from "[h]arm to image . . . due to the proceeding improperly filed before the American courts" of €1 from each defendant (i.e., Gerard, Morel, and ADAM), plus an acknowledgment of responsibility (*id.*); and a supplemental civil fine of €3,000 each (*id.*). Vivendi also seeks an "injunction to discontinue the class action pending before the New York courts" (p. 11), accompanied by a "penalty of €50,000 per defendant and per day of delay" if plaintiffs Gerard and Morel fail to obey the injunction (*id.*). Finally, Vivendi seeks an order that Gerard and Morel "jointly and severally pay to the plaintiff the sum of €200,000 under Article 700 of the Code of Civil Procedure and to bear all costs" (p. 12).[1]

---

[1] Plaintiffs do not have any reason to believe that Vivendi's trial counsel in this Court participated in the decision to file the Paris Action.

2

**B.     Commentary by Vivendi Representatives in the Press**

According to French attorney Hervé Pisani, who signed the Paris Action papers for Vivendi and who is a partner at the Darrois Villey Maillot Brochier law firm in Paris, the key objective of the Paris Action is to remove French shareholders from the US class action:

> Vivendi's lawyer, Hervé Pisani, back in Paris after attending the opening of the New York trial at the beginning of the week, explained that it is a matter of making the French shareholders "*disappear*" from the American lawsuit.[2]

When asked why the Paris Action had been filed in the midst of the class action trial, Mr. Pisani reportedly acknowledged that Vivendi had "tried everything in the United States to exclude the French shareholders from the American proceeding."[3]  In the article, he was quoted as attributing the lawsuit to the "enormous expense" Vivendi was incurring to defend the class action.[4]

The October 9, 2009, edition of the French magazine *Le Point* quotes an unnamed "defense" representative commenting on Vivendi's "counter-attack," which "came without delay, this time in France," against the US litigation:

---

[2] "Vivendi Pleads Innocent in New York, Brings Legal Action Against Shareholders in Paris," *Agence France-Presse*, Oct. 11, 2009 (emphasis added; quotation marks in original).  A copy of this article (with certified translation) is attached as Exhibit C to the Vasilescu Palmer Declaration.

[3] "Trial in the United States: Vivendi Subpoenas Two French Shareholders," *Agence France-Presse*, dated Oct. 9, 2009.  A copy of this article (with certified translation) is attached as Exhibit D to the Vasilescu Palmer Declaration.

[4] *See* "Vivendi Subpoenas Colette Neuville and Two French Shareholders," *Agence France-Presse*, dated Oct. 9, 2009.  A copy of this article (with certified translation) is attached as Exhibit D to the Vasilescu Palmer Declaration.

The legal proceeding is very different in the U.S. because Vivendi's financial statements will be judged by a 12-person jury, selected by Judge Richard Holwell on Monday. For the jurors, this will involve serving for three consecutive months. Under these conditions, employed New Yorkers have declined in large numbers. This is not very reassuring for Vivendi. "Consequently, of twelve jurors, only one Caucasian was selected. And four or five of the jurors don't have enough money to buy a television set," the defense noted with concern.[5]

**C.    Vivendi's Intervention in the Appeal from the "Nanterre" Proceedings Regarding Class Notice**

In addition, on Tuesday of last week, Vivendi intervened in the Versailles Court of Appeal in the appeal of the case brought against the Abbey Spanier firm alleging wrongful dissemination of class notice in France.[6] The Court may recall that this case was originally filed in Nanterre (outside Paris) on behalf of an individual Vivendi shareholder who is represented by a lawyer who worked at the Darrois firm as recently as mid-2006.[7] The Nanterre court refused to grant any relief. Now, Vivendi itself has formally appeared in the appeal in that action, stating that "in the final analysis [it is] up to the Versailles Court of Appeal to put an end to this manifestly unlawful disorder as quickly as possible." Vivendi has requested that the Versailles Court of Appeal "declare that the notice intended for the French shareholders and distributed in France . . . violates French public policy and constitutes manifestly unlawful disorder," and to order the Abbey Spanier firm to request that this Court "postpone the end of the opt-out period for the benefit of Vivendi's French shareholders in order to publish an amended notice that is in compliance with the requirements of French law."

---

[5] "The Stakes in the Messier Trial in New York," *Le Point*, Oct. 9, 2009. A copy of this article (with certified translation) is attached as Exhibit F to the Vasilescu Palmer Declaration.

[6] A copy of Vivendi's appellate intervention brief (with certified translation) is attached as Exhibit G to the Vasilescu Palmer Declaration.

[7] *See* letter from Arthur Abbey to Judge Holwell, dated July 16, 2009.

Vivendi's intervention papers include several materially false or misleading assertions, including that the class action has been brought by the Abbey Spanier firm, rather than by individual and institutional share purchasers; and that "[n]o French Vivendi shareholder was individually informed of the existence of the action in progress in the United States," when in fact the notice administrator informs us that thousands of French notice packets were mailed directly to individuals or entities in France (in addition to notices distributed through brokers). Moreover, at the initial hearing before the Versailles Court of Appeal last Tuesday — which should not have proceeded since the appellant had never served the Abbey Spanier firm with papers — Mr. Pisani told the Versailles Court that the hearing could and should proceed since he had spoken to Mr. Abbey when he was in New York for the beginning of the class action trial, and that Mr. Abbey had confirmed that he had been served with or received the appellate papers. Such a conversation never took place, and Mr. Pisani's representation was false and a fraud on the Court.

Based on all of these developments, Vivendi's intent has become clear: to obstruct; to intimidate; to tamper with witnesses; and to prevent the fair conclusion of this trial.[8]

## III.   ARGUMENT

### A.   Plaintiffs Are Entitled to an Anti-Foreign-Suit Injunction

Because the traditional four-part test for a preliminary injunction "provides an awkward fit in cases involving international anti-suit injunctions, district courts have no obligation to employ it in that context." *Quaak*, 361 F.3d at 19 (citing *Stonington Partners, Inc. v. Lernout &*

---

[8] Vivendi has also sued the French minority shareholder rights organization l'Association de défense des actionnaires minoritaires (*ADAM*) for being the alleged "filer and organizer" of the US class action. As ADAM's president Colette Neuville has recently said, Vivendi's action is an "absolutely scandalous step," and that "[w]e did not organize the class action, but we are part of a class action that has already been initiated." *See* "Trial in the United States: Vivendi Subpoenas Two French Shareholders," *Agence France-Presse*, dated Oct. 9, 2009 (Ex. D).

*Hauspie Speech Prods.*, 310 F.3d 118, 129 (3d Cir. 2002)).  Instead, the analysis begins with the accepted "common ground that federal courts have the power to enjoin those subject to their personal jurisdiction from pursuing litigation before foreign tribunals." *Quaak*, 361 F.3d at 16. Courts in this Circuit then typically follow the test set forth in *China Trade & Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d Cir. 1987), which starts by examining whether "two threshold requirements are met: '(A) the parties are the same in both matters, and (B) resolution of the case before the enjoining court is dispositive of the action to be enjoined.'" *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 119 (2d Cir. 2007) (quoting *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 652 (2d Cir. 2004)); *see also China Trade*, 837 F.2d at 35.

"Once the threshold requirements are met, the issue becomes one of informed discretion." *Motorola Credit Corp. v. Uzan*, No. 02 Civ. 666 (JSR) 2003 WL 56998, at *3 (S.D.N.Y. Jan. 7, 2003).  The discretionary *China Trade* factors include "whether the parallel litigation would: (1) frustrat[e] . . . a policy in the enjoining forum; (2) . . . be vexatious; (3) . . . threat[en] . . . the issuing court's in rem or quasi in rem jurisdiction; (4) . . . prejudice other equitable considerations; or (5) . . . result in delay, inconvenience, expense, inconsistency, or a race to judgment." *Karaha*, 500 F.3d at 119 (quoting *Ibeto Petrochemical Indus. Ltd. v. M/T Beffen*, 475 F.3d 56, 64 (2d Cir. 2007)); *China Trade*, 837 F.2d at 35.  In this case, the threshold requirements are readily satisfied, and application of the discretionary factors clearly supports an injunction requiring Vivendi to drop the Paris Action.[9]

---

[9] Many of the same arguments also apply to Vivendi's intervention in the proceeding before the Versailles Court of Appeals.  As in the Paris Action, Vivendi seeks to undo this Court's exercise of jurisdiction over French plaintiffs, this time by nullifying the notice given to French Class members.  The President of the Regional Court rejected those claims in the underlying action, giving rise to the proceeding before the Versailles Court of Appeal in which Vivendi has

### 1.    The Threshold Requirements of *China Trade* Are Satisfied

Turning to the first threshold requirement of *China Trade*, the parties are the same in both actions.  While Vivendi did not sue the non-French class representatives, that is immaterial, because *China Trade* requires only that the real parties in interest be the same or similar.  *See, e.g.*, *Motorola*, 2003 WL 56998, at *2 (finding that non-identical parties were sufficiently similar because "the real parties in interest are the same in both matters"); *MasterCard Int'l, Inc. v. Argencard Sociedad Anonima*, No. 01 Civ. 3027 (JGK), 2002 WL 432379, at *10 (S.D.N.Y. Mar. 20, 2002) (finding the parties were sufficiently similar, despite inclusion of a controlling shareholder who was "not a necessary party to that action").  Because Vivendi on the one hand, and Gerard and Morel on the other hand, are the real parties in interest in this dispute, the first threshold requirement is satisfied.

As to the second threshold requirement, the two proceedings are sufficiently similar that resolution of the action before this Court would be dispositive of the Paris Action.  Indeed, the Paris Action "is not a *new* action in the sense of raising new issues unrelated to the United States proceedings," *see In re Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 465 F. Supp. 2d 283, 299 (S.D.N.Y. 2006) (emphasis in original), *aff'd,* 500 F.3d 111 (2d Cir. 2007) -- on the contrary, the goal of the Paris Action is explicitly to terminate the French class member portion of the present litigation.  It is richly ironic that Vivendi, in the Paris Action, accuses Gerard and Morel of forum shopping, given that Vivendi has already raised, litigated, and lost each and every one of those forum issues in this Court.  On the other hand, it is Vivendi that waited until this trial began to go shopping in Paris -- even though Gerard and Morel's claims had been made in New York years earlier (almost seven years for Gerard, and

---

intervened.    Accordingly, plaintiffs respectfully request that the Court consider enjoining Vivendi to withdraw its intervention in the Versailles proceeding as well.

four-and-a-half years for Morel), when they sought to represent the Class as French class representatives. The real forum shopper in this case is Vivendi.

Because all of these issues have been fully litigated, a final judgment in this case would collaterally estop Vivendi from re-litigating them in another proceeding. *Restatement (Second) of Judgments* § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties. . . ."); *id.* at cmt. c ("[I]f the party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination, new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact. . . ."). Accordingly, the second threshold requirement of *China Trade* is satisfied because resolution of the case before this Court will dispose of the Paris Action. *See Karaha*, 500 F.3d at 122 (citing the Restatement with approval); *see also Paramedics*, 369 F.3d at 655 ("But where one court has already reached a judgment—on the same issues, involving the same parties—considerations of comity have diminished force.").

### 2.     The Discretionary *China Trade* Factors Also Favor an Injunction

Application of the discretionary *China Trade* factors also favors issuance of an antisuit injunction here. Though all the factors are relevant, *China Trade* identified two of particular significance: "(A) whether the foreign action threatens the jurisdiction of the enjoining forum, and (B) whether strong public policies of the enjoining forum are threatened by the foreign action." *China Trade*, 837 F.2d at 36 (citing *Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 937 (D.C. Cir. 1984)). "Both considerations are salient in this case," *Paramedics*, 369 F.3d at 654, and each strongly supports the imposition of an anti-foreign-suit injunction.

8

Since Vivendi's Paris Action expressly requests "an injunction to the defendants to discontinue the class action pending before the New York courts" (*see* Ex. A at p. 11), it is clear that the Paris Action represents a direct assault on this Court's jurisdiction to adjudicate French class members' claims. The requested penalties and damages are to the same effect. *See Quaak*, 361 F.3d at 20 (KPMG's attempt "to impose huge financial penalties on securities fraud plaintiffs" for pursuing remedies in US court justifies injunction). Vivendi's effort to deter legitimate prosecution of claims "by in terrorem tactics can scarcely be viewed as anything but an effort to 'quash the practical power of the United States courts.'" *Id.* (quoting *Laker Airways*, 731 F.2d at 938). An injunction is thus "necessary to insure a complete adjudication of the matter before [the Court]." *United States v. Davis*, 767 F.2d 1025, 1039 (2d Cir. 1985).

The record is similarly clear that the "injunction is also supported by strong public policy considerations." *Karaha*, 500 F.3d at 126. This Court has recognized the "strong interest" in enforcing federal securities laws against foreign defendants who commit fraud. *In re Vivendi Universal, S.A., Sec. Litig.*, 242 F.R.D. 76, 106 (S.D.N.Y. 2007) ("Where, as here, the Court has determined that significant alleged conduct occurred in the United States warranting application of the federal securities laws to foreign actors . . . the United States has a strong interest in the enforcement of those laws where applicable.") (citing *In re Vivendi Universal, S.A., Sec. Litig.*, 381 F. Supp. 2d 158, 169 (S.D.N.Y. 2003); *In re Vivendi Universal, S.A., Sec. Litig.*, No. 02 Civ. 5571 (RJH) (HBP), 2004 WL 2375830 , at *7 (S.D.N.Y. Oct. 22, 2004) ("The United States has a strong interest in imposing its law over the conduct of corporate officers operating out of the United States . . . even if the officers were only operating out of the United States for part of the alleged class period and even if the officers spent approximately half of their time carrying on their official functions from a non-U.S. office.").

The remaining discretionary *China Trade* factors also support imposition of an injunction. Vivendi's filing of the Paris Action just after trial began here virtually guarantees that the Paris Action will be vexatious and result in unreasonable delay, inconvenience, and expense to Gerard and Morel, who will be forced to defend against the Paris Action at the same time they are prosecuting their claims in the United States.[10]  The suspicious timing — only a week before plaintiff Morel was scheduled to fly to New York to testify — strongly suggests that Vivendi filed the Paris Action to intimidate a class representative and witness into dropping out of the litigation on the eve of his scheduled appearance before the jury. Vivendi's attempt to deprive the Court of "necessary and highly relevant evidence" from plaintiff Morel is clear indication that "the sole purpose of the [foreign] litigation was to block" trial testimony, etc. *Davis*, 767 F.2d at 1039.  Such intimidation of key witnesses, which arguably amounts to tampering and obstruction of justice, underlines the gravity of Vivendi's misconduct in this case.[11]

Finally, in weighing the equities, it should be noted that Vivendi, "not the securities fraud plaintiffs or the district court, set the stage for a crisis of comity." *Quaak*, 361 F.3d at 20.  If Vivendi "had not filed a foreign petition calculated to generate interference with an ongoing American case, the district court would have . . . no need to issue a defensive injunction that [seeks] only to preserve the court's ability to adjudicate the claims before it according to the law

---

[10] Indeed, the return date for the Paris Action is November 25, 2009, guaranteeing it will hang like a Sword of Damocles over Gerard and Morel for the pendency of the US action.

[11] Mr. Pisani's comments that the purpose of the French suit is to make the French shareholders "disappear" from the American lawsuit, and that Vivendi "tried everything in the United States to exclude the French shareholders from the American proceeding," confirm that Vivendi has pursued litigation overseas for the improper purpose of intimidating plaintiffs' witnesses from testifying and otherwise obstructing the orderly prosecution of this case.

of the United States." *Id.* at 20-21. Because all of the *China Trade* requirements are satisfied, Vivendi should be enjoined to withdraw the Paris Action.[12]

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' motion should be granted, and the Court should issue an injunction compelling Vivendi to withdraw the Paris Action and prohibiting Vivendi from taking any further steps to prosecute that action, as well as any further relief the Court may deem appropriate.

Dated: October 13, 2009

Respectfully submitted,

ABBEY SPANIER RODD & ABRAMS LLP

Arthur N. Abbey
Stephen T. Rodd
212 East 39th Street
New York, New York 10016
212.889.3700
aabbey@abbeyspanier.com
srodd@abbeyspanier.com

*Lead Counsel for Class Plaintiffs*

---

[12] Plaintiffs seek a mandatory injunction that Vivendi withdraw the Paris Action, as well as a prohibitory injunction that Vivendi take no further action to prosecute the Paris Action against Gerard and Morel. In *Quaak,* a mandatory injunction was issued and affirmed. 361 F.3d at 15 (KPMG ordered to "withdraw forthwith its writ"). In *Software AG, Inc. v. Consist Software Solutions, Inc.,* defendants sought relief from courts in Brazil to frustrate the case before Judge McMahon; she observed: "This Court has the authority to order  [defendant] to withdraw the pending proceedings in Brazil." *Software,* No. 08 Civ. 389 (CM) (FM), 2008 U.S. Dist. LEXIS 19347, at *72-73 (S.D.N.Y. Feb. 21, 2008), *aff'd,* 323 Fed. Appx. 11 (2d Cir. 2009), (citing *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.,* No. 04 Civ. 5732 (WHP), 2006 U.S. Dist. LEXIS 83169, at * 11 (S.D.N.Y. Nov. 16, 2006)).

MILBERG LLP
Matthew Gluck
Michael C. Spencer
One Pennsylvania Plaza
New York, New York 10119
212.594.5300
mgluck@milberg.com
mspencer@milberg.com

BROWNE WOODS GEORGE LLP
Brian C. Kerr
49 West 37th Street, 15th Floor
New York, NY 10018
212.354.4901
bkerr@bwgfirm.com

*Counsel for Class Plaintiffs*