UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE VIVENDI UNIVERSAL, S.A.
SECURITIES LITIGATION

02 Civ. 5571 (RJH) (HBP)

**MEMORANDUM
OPINION AND ORDER**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

This is a securities fraud class action (the "Action") brought on behalf of shareholders of Vivendi Universal, S.A. ("Vivendi") against Vivendi and its former Chief Executive Officer and Chief Financial Officer, Jean-Marie Messier and Guillaume Hannezo (collectively, "defendants"). Full familiarity with the facts and history of this case, as set forth in this Court's previous opinions, is presumed.[1] The current issue before the Court is plaintiffs' motion for a foreign anti-suit injunction, requiring Vivendi to withdraw a lawsuit it recently filed in the *Tribunal de Grande Instance de Paris* (the "Paris Action") against Olivier Gerard and Gerard Morel (two class representatives from France) and l'ADAM (*l'Association de Défense des Actionnaires Minoritaires,* a French shareholders' association). In the Paris Action Vivendi seeks, *inter alia*, to enjoin Gerard and Oliver from continued participation in the trial of this Action which began on October 5, 2009 and will likely continue to year's-end.[2] Thus, both a U.S. court and a French court are being asked to enjoin parties from proceeding in a foreign jurisdiction.

---

[1] Relevant prior opinions of this Court include: *In re Vivendi Universal, S.A. Sec. Litig.,* 381 F. Supp. 2d 158 (S.D.N.Y. 2003) ("*Vivendi I*"); *In re Vivendi Universal, S.A. Sec. Litig.,* No. 02 Civ. 5571 (RJH), 2004 WL 2375830 (S.D.N.Y. Oct. 22, 2004) ("*Vivendi II*"); *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76 (S.D.N.Y. 2007) ("*Vivendi III*"); and *In re Vivendi Universal, S.A. Sec. Litig.,* No. 02 Civ. 5571 (RJH), 2009 WL 855799 (S.D.N.Y. Mar. 31, 2009) ("*Vivendi IV*").

[2] Plaintiffs also requested that the Court enjoin Vivendi to withdraw its intervention in an appeal then pending before the Versailles Court of Appeal in a lawsuit originally brought by a Vivendi shareholder

The Court concludes that plaintiffs in this Action have likely established their entitlement to an anti-suit injunction against Vivendi. However, the Court also concludes that steps may be taken to avert the need for either a French or a U.S. court to enter competing anti-suit injunctions, and in the interests of comity, the Court elects to take such a path. Accordingly, plaintiffs' motion is DENIED.

## BACKGROUND

The following is a summary of only those facts that are relevant to plaintiffs' motion for a preliminary anti-suit injunction.

Plaintiffs, shareholders of Vivendi from the United States and various other countries, brought this action in 2002 on behalf of themselves and a class of similarly-situated purchasers of Vivendi securities. Plaintiffs alleged that defendants issued materially false and misleading statements concerning Vivendi's financial health that caused the company's shares to trade at artificially inflated prices between October 30, 2000 and August 14, 2002, inclusive, in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934. *Vivendi I,* 381 F. Supp. 2d at 164. Defendants moved to dismiss the action, claiming, *inter alia*, that the Court lacked subject matter jurisdiction over claims brought by foreign shareholders who purchased their shares abroad. Defendants contended that the conduct at issue, namely the creation and dissemination of allegedly fraudulent statements and financial data, was initiated, organized, and approved by Vivendi executives in France, and that France was the appropriate forum, at least with

---

against plaintiffs' counsel, Abbey Spanier Rodd & Abrams LLP, regarding the adequacy of the notice to class members under French law (the "Versailles Action"). Vivendi voluntarily intervened in this suit on October 5, 2009. However, before this Court had ruled upon plaintiffs' motion, plaintiffs informed the Court that the Versailles Action had been dismissed. (Trial Transcript ("Tr.") at 2074). Thus, the question whether this Court should issue an anti-suit injunction relating to the Versailles Action is moot and will not be considered.

respect to the claims of French shareholders. The Court, in a decision by Judge Baer, denied defendants' motion with respect to all shareholders, U.S. and European. The Court found that subject matter jurisdiction was satisfied, in part due to the critical fact that Vivendi's Chief Executive Officer and Chief Financial Officer moved their headquarters to the United States during the crucial time period in which investors claimed to have been misled. *Id.* at 169-70. Thus, the Court's exercise of jurisdiction was based on the traditional notion that a court may exercise its jurisdiction to regulate allegedly illegal activity occurring within its territory.[3]

Thereafter, plaintiffs moved to certify a class consisting of Vivendi shareholders from the United States and various European countries. The Court found that most requirements for certifying a class under Federal Rule of Civil Procedure 23(b)(3) ("Rule 23(b)(3)") were easily met. *See generally Vivendi III,* 242 F.R.D. 76. Vivendi, however, argued that French shareholders should be excluded from the class. *Id.* at 97-102. Vivendi contended at the class certification stage, and continues to contend in its opposition to the present motion, that class actions are unconstitutional under French law and contrary to French concepts of international public policy. (*See id.*; Def. Br. at 1.) Consequently, Vivendi asserted, a judgment in this Action will not be given *res judicata* effect in France, thereby subjecting Vivendi to a risk of duplicative lawsuits. (*Id.*) In the absence of *res judicata* in France, Vivendi argued that a class action that included French shareholders was not a "superior" procedure for adjudication of shareholder claims as required by Rule 23(b)(3). *Vivendi III*, 242 F.R.D. at 97-102.

---

[3] Judge Baer's decision on subject matter jurisdiction was affirmed by this Court on reconsideration. *See generally Vivendi II*, 2004 WL 2375830.

3

On May 21, 2007, this Court certified a single class which included Vivendi shareholders from the United States, France, England, and the Netherlands. *Vivendi III,* 242 F.R.D. at 109. In analyzing whether to certify the class, the Court considered whether, under Rule 23(b)(3), a class action was "superior to other available methods for fairly and efficiently adjudicating the controversy." The Court concluded that it was, as to American, French, English, and Dutch shareholders. *Id.* at 105. In reaching its conclusion, the Court separately considered the non-exhaustive list of pertinent factors set forth in Rule 23(b)(3):

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

F. R. Civ. P. 23(b)(3).[4] The Court concluded as to the first two factors that "this prototypical securities fraud case was particularly appropriate for class treatment." *Vivendi IV*, 2009 WL 855799, at *2 (citing *Vivendi III,* 242 F.R.D. at 92). The Court considered the probable *res judicata* effect of a judgment entered by this Court under the third articulated factor, the desirability of concentrating claims in this forum. With regard to the inclusion of French shareholders in the class, the Court observed at the outset that "[t]he issue of whether a United States class action judgment would be recognized and enforced in France has never been directly addressed by French courts." *Vivendi III,* 242 F.R.D. at 96. After analyzing the expert affidavits submitted by the parties, the Court concluded that "a judgment in this case would, more likely than not, be

---

[4] In *Vivendi III*, the Court relied on the 2003 version of Rule 23. Rule 23 has since been amended, as part of the general "restyling" of the Federal Rules of Civil Procedure. Citations in this opinion are to the current version of Rule 23.

4

granted recognition [in France] at such time as an exequatur proceeding is instituted."[5] *Id.* at 102. The Court reached this conclusion by applying the test set forth in the French case, *Munzer v. Jacoby*, Cass. civ. lre, Jan. 7, 1964, [1964] Juris-Classeur Périodique [J.C.P.] II 13590, which asks, *inter alia*, whether a foreign judgment would violate French concepts of "international public policy."[6] While recognizing that France may not itself adopt a U.S.-style class action procedure, the Court concluded that a U.S. judgment arising out of allegedly fraudulent conduct occurring in the United States would not violate French concepts of international public policy. *Vivendi III,* 242 F.R.D. at 101-102. Considering this and other important factors relevant to the issue of superiority, the Court included French shareholders in the class. The Second Circuit declined to hear an interlocutory appeal of the class certification decision, and the Supreme Court declined to issue a writ of certiorari. *In re Vivendi Universal, S.A. Sec. Litig.*, No. 07-1419 (2d Cir. May 8, 2007); *Vivendi S.A. v. Gerard*, 128 S. Ct. 391 (2007).[7]

---

[5] "Under French case law, before a foreign decision may be enforced or recognized (i.e., given preclusive effect) in France, it must first be subjected to the 'exequatur' procedure. Exequatur proceedings are concerned with the enforceability of a foreign decision under French law, and not with the substance of the underlying dispute. If exequatur is granted, the underlying judgment is not changed, but rather its content is incorporated into the exequatur judgment, which then receives enforceability and res judicata effect in France." *Vivendi III,* 242 F.R.D. at 96 (internal citations omitted).

[6] The four conditions that must be met under *Munzer* in order to grant exequatur are: (1) the foreign court must properly have jurisdiction under French law (the "jurisdictional prong"); (2) the foreign court must have applied the appropriate law under French conflict-of-law principles (the "applicable-law prong"); (3) the decision must not contravene French concepts of international public policy (the "public policy prong"); and (4) the decision must not be a result of *fraude á la loi* (evasion of the law) or forum shopping (the "forum shopping prong"). *Vivendi III*, 242 F.R.D. at 96.

[7] In March 2008, defendants filed a motion for partial reconsideration of the class certification opinion, citing "recent" information that allegedly showed that Rule 23(b)(3)'s superiority requirement could not be established as to French shareholders. Defendants reiterated their contention that French courts would not give *res judicata* effect to a judgment in a Rule 23(b)(3) opt-out class action and, therefore, that this action cannot be a superior means of litigating the French shareholders' claims. On March 31, 2009, defendants' motion was denied. *Vivendi IV,* 2009 WL 855799. Defendants filed a petition for leave to appeal the Court's denial of their motion for reconsideration to the Second Circuit. *In re Vivendi Universal, S.A. Sec. Litig.,* No. 09-1569, *petition for leave to appeal filed* (2d Cir. Apr. 19, 2009). On September 15, 2009, the Second Circuit denied this petition, holding that an immediate interlocutory appeal, though permissible, was unwarranted. *In re Vivendi Universal, S.A. Sec. Litig.,* No. 09-1959 (2d Cir. Sept. 15, 2009).

As noted, trial of this Action began on October 5, 2009. On October 8, 2009, Vivendi filed the Paris Action, which asked the *Tribunal de Grande Instance de Paris* to require Gerard, Morel and ADAM "to provide reparations for the injury they have caused by abusively filing suit in US jurisdiction, on the one hand . . . and on the other hand, by enjoining [them], at the threat of further penalties, to abandon the class action." (Palmer Decl. Ex. A at 3.) Vivendi contended that the dispute between Vivendi and its French shareholders should have been submitted to the French courts and that "[r]ecourse to US courts within the context of an action that would not be recognized in France, regarding a dispute falling under the natural jurisdiction of the French courts, constitutes abuse of forum shopping, which is an offense defined by Article 1382 of the [French] Civil Code." (*Id.* at 6.) Vivendi's initial submission in the Paris Action asked, *inter alia,* for an order requiring Gerard, Morel, and ADAM to pay damages in the amount of one million Euros, to pay three thousand Euros as a civil fine for abuse of legal proceedings, and to withdraw from the U.S. lawsuit on threat of a penalty of fifty thousand Euros per defendant per day of delay. (*Id.* at 12.) The return date for the Paris Action is November 25, 2009. (Pl. Br. at 10 n.10.)

On October 13, 2009, plaintiffs filed the present motion for a preliminary injunction, seeking to enjoin Vivendi from proceeding with the Paris Action against Gerard and Morel. The next day, Vivendi altered course and informed Gerard, Morel and ADAM in writing that the only monetary judgment that Vivendi now seeks is "one symbolic Euro per defendant," which Vivendi alleges is necessary to maintain standing before the French court. (Crépin Decl. ¶9, Ex. 1).

6

Plaintiffs maintain that although Vivendi withdrew its monetary demands "after being confronted with its blunder in the press and in this Court," the Paris Action remains coercive in two respects: (1) it is still seeking to enjoin Gerard and Morel from participating in the action before this Court, and to thus cause the French class members to "disappear" from this action; and (2) Gerard and Morel will still incur substantial legal fees to defend the Paris Action. (*See* Pl. Reply at 1, 5; Tr. at 1263-64.) Vivendi disputes plaintiffs' contention that it is seeking to coerce and intimidate Gerard and Morel or to disrupt proceedings in this Court. (Crépin Decl. ¶ 8.) Rather, Vivendi contends that its decision to file the Paris Action was motivated by the "hope of obtaining . . . a decision from a French court, which might then be helpful to this Court in any further consideration of these issues." (Def. Br. at 2.) Requesting a French court to order class plaintiffs to withdraw from this Action in the middle of a trial on the merits is a most unusual form of help.

## DISCUSSION

**I.     Legal Standard for Issuance of a Foreign Anti-Suit Injunction**

Requests for foreign anti-suit injunctions bring to the forefront important considerations of international comity.[8] An inquiring court must find a way to accommodate potentially conflicting national policies and laws, without unduly interfering with the judicial processes of a foreign sovereign. *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren,* 361 F.3d 11, 16 (1st Cir. 2004). The power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well

---

[8] Comity is often defined as "the recognition to which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard to both international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." Daniel Tan, *Anti-Suit Injunctions and the Vexing Problem of Comity,* 45 Va. J. Int'l L. 283, 301 (2005).

7

established, *China Trade & Dev. Corp. v. M.V. Chong Yong,* 837 F.2d 33, 35 (2d Cir. 1987) (citations omitted), but district courts have discretion to issue such injunctions "only in the most compelling circumstances." *Laker Airways Ltd. v. Sabena,* 731 F.2d 909, 927 (D.C. Cir. 1984). This is so because although foreign anti-suit injunctions technically operate only against the parties, in effect they restrict the jurisdiction of the courts of a foreign sovereign. *China Trade,* 837 F.2d at 35. Consequently, foreign anti-suit injunctions should be "used sparingly . . . and granted only with care and great restraint." *Id.* at 36 (citations and quotations omitted). Parallel proceedings in two or more countries on the same claims should "ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." *Id.* (citing *Laker Airways,* 731 F.2d at 926-27).

In the Second Circuit, a district court may issue an anti-suit injunction only if the test set forth in *China Trade* is met.[9] Under the *China Trade* test, an anti-suit injunction against parallel foreign litigation may be imposed only if two threshold requirements are met: (1) the parties are the same in both matters, and (2) resolution of the case before the enjoining court is dispositive of the action to be enjoined. *Paramedics Electromedicina Comercial, Ltda. V. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 652 (2d Cir. 2004) (citing *China Trade,* 837 F.2d at 35). When these threshold requirements are met, district courts are directed to consider five factors in determining, in their discretion, whether

---

[9] The Second Circuit has also stated, with little analysis, that a party seeking a preliminary anti-suit injunction must satisfy the traditional test for a preliminary injunction in addition to satisfying the *China Trade* test. *See Software A.G., Inc. v. Consist Software Solutions, Inc.*, 323 Fed. Appx. 11, 12 (2d Cir. 2009); *In re Millennium Seacarriers, Inc*., 458 F.3d 92, 98 (2d Cir. 2006); *see also Comverse, Inc. v. Am. Telecomm., Inc.*, No. 06 Civ. 6825 (PKL), 2006 WL 3016315, at *4 (S.D.N.Y. Oct. 23, 2006). However, at least one other circuit court has observed that the traditional test for issuance of a preliminary injunction "provides an awkward fit in cases involving international antisuit injunctions." *See Quaak,* 361 F.3d at 19. For purposes of this opinion, the Court need not consider the "fit" between the traditional test for the issuance of a preliminary injunction and plaintiffs' request for an international anti-suit injunction because, as will be set forth below, the Court declines to issue such an injunction on other grounds.

comity considerations render an injunction against the foreign action appropriate: (1) whether the foreign action poses a threat to the enjoining court's jurisdiction; (2) whether the foreign action would frustrate a policy in the enjoining forum; (3) whether the foreign action would be vexatious; (4) whether the proceedings in the other forum prejudice other equitable considerations; and (5) whether adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment. *China Trade,* 837 F.2d at 35-36 (citing *Am. Home Assurance Corp. v. The Ins. Corp. of Ireland, Ltd.*, 603 F. Supp. 636, 643 (S.D.N.Y. 1984). All five factors should be considered in each case, *Ibeto Petrochemical Indus. Ltd. v. M/T Beffen,* 475 F.3d 56, 64 (2d Cir. 2007), but most important is whether the foreign action threatens the enjoining forum's jurisdiction or frustrates its strong public policies. *China Trade,* 837 F.3d at 36.

## II. Is an Anti-Suit Injunction Appropriate as to the Paris Action?

The first threshold requirement for the issuance of a foreign anti-suit injunction is that the parties be the "same" in the action in the enjoining court and the action to be enjoined. This requirement has in practice been interpreted flexibly to require only "substantial similarity" between the parties to the two actions. *See Paramedics,* 369 F.3d at 652 (presence of different party in foreign action did not defeat the "same parties" requirement where the purportedly distinct party was a close affiliate of the parties in the U.S. action)*; Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.,* 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006) ("[w]here parties to the two actions are affiliated or substantially similar, such that their interests are represented by one another, courts have found the first requirement is met"). Where the "real parties in interest" are the same in the two actions, even if all parties are not identical, *China Trade*'s first threshold

9

requirement will be satisfied. *Motorola Credit Corp. v. Uzan,* No. 02 Civ. 666 (JSR), 2003 WL 56998, at *2 (S.D.N.Y. Jan. 7, 2003) (finding sufficient similarity between the parties to satisfy the threshold requirement even though not all parties to the two actions were identical because the "real parties in interest are the same in both matters"); *see also MasterCard Int'l, Inc. v. Argencard Sociedad Anonima,* No. 01 Civ. 3027 (JGK), 2002 WL 432379, at *10 (S.D.N.Y. Mar. 20, 2003); *Storm LLC v. Telenor Mobile Commc'ns AS,* No. 07 Civ. 13157 (GEL), 2006 WL 3735657, at *6 (S.D.N.Y. Dec. 15, 2006); *SG Avipro Fin. Ltd. v. Cameroon Airlines,* No. 05 Civ. 655 (LTS), 2005 WL 1353955, at *2 (S.D.N.Y. June 8, 2005).

Vivendi points out that the Action before this Court includes two individual defendants (Messrs. Messier and Hannezo) and an undeterminable number of other class members who are not present in the Paris Action, but it has not seriously argued that substantial identity of the parties is lacking. (*See* Def. Br. at 10-11; Tr. at 1277.) The Court concludes that the parties in the Paris Action are sufficiently similar to the parties in this Action to satisfy *China Trade*'s first threshold requirement, at least for purposes of an injunction requiring Vivendi to withdraw the Paris Action as against Gerard and Morel. Although the parties to this Action and the Paris Action are not identical—in addition to the distinctions identified by Vivendi, the Paris Action also includes a party (ADAM) not present in the action before this Court—Vivendi, Gerard and Morel are "real parties in interest" to both disputes in the sense that both disputes pit shareholders, represented by Gerard and Morel and others, against Vivendi. *See Paramedics,* 369 F.3d at 652; *Motorola,* 2003 WL 56998, at *2; *Int'l Equity,* 441 F. Supp. 2d at 562.

10

The second threshold requirement is that the action in the enjoining court must be "dispositive" of the action to be enjoined. The existence of this requirement is well-established under Second Circuit law, but its meaning and rationale are not well developed in the case law.[10] Vivendi contends that the action in this Court is not dispositive of the Paris Action because, "however this action is resolved, it is almost inevitable that a French court will need to address the issues of preclusion, res judicata effect and French constitutional law raised in [the Paris Action]." (Def. Br. at 11.) While it is certainly true that *a* French court may be called upon to consider the *res judicata* effect of a judgment in the present Action, it is not obvious that the *Tribunal de Grande Instance de Paris* will "need" to address the issues now, at a time when a trial is ongoing in New York and a judgment has yet to be entered. As a general proposition, the scope of *res judicata* in France with regards to a U.S. judgment would ordinarily await entry of that judgment, the institution of a second action in France by a Vivendi shareholder, and a determination of the facts surrounding the institution of that action. *Vivendi IV,* 2009 WL 855799, at *12. In that context, a French court would address Vivendi's "forum shopping" claim which, as Vivendi concedes, is premised on its primary contention that a U.S. judgment would violate international public policy and would not be recognized in France.

---

[10] The question of whether an action is dispositive of a foreign action has typically arisen when one party seeks to bring claims before a foreign court that a U.S. court has found must be submitted to arbitration. In this context, U.S. courts have readily held that decisions of U.S. courts that certain disputes must be submitted to arbitration are dispositive of parallel claims in foreign courts or arbitral tribunals relating to the same underlying disputes. *See, e.g.*, *Paramedics*, 369 F.3d at 653 (federal judgment compelling arbitration was dispositive of foreign litigation because the foreign litigation "concern[ed] issues that, by virtue of the district court's judgment, are reserved to arbitration"); *Ibeto*, 475 F.3d at 64 (district court's decision that parties to an oil shipment contract had to arbitrate their dispute, and its resolution by arbitration of that dispute, was dispositive of a Nigerian proceeding seeking to raise same dispute); *see also Storm LLC*, 2006 WL 3735657, at *7; *Motorola*, 2003 WL 58998, at *2.

Turning more directly to the question of whether this Action is dispositive of the Paris Action, it seems obvious that the Paris Action is "plainly interdictory in nature" in that it seeks to enjoin Gerard and Morel from participating in the Action before this Court.  *See Quaak,* 361 F.3d at 20.  Thus, in one sense, a final judgment in this case will dispose of the Paris Action because the alleged need for the French court to issue an injunction against this Action will be mooted.

Viewing the question more broadly, the Court concludes that the "dispositive" test in *China Trade* cannot be applied in the formalistic sense suggested by Vivendi. Technically speaking, no action by a United States court can ever be dispositive of a foreign court's decision because that court's determination about whether to give *res judicata* effect to a U.S. judgment is governed by comity principles, which always give a foreign court discretion to determine whether to enforce a U.S. judgment (absent a treaty stating otherwise).[11]  *See* Tan, *supra* note 8, at 317.  Thus, if *China Trade*'s requirement that the action in the enjoining court be dispositive of the action to be enjoined meant what Vivendi suggests it does, the requirement could never be satisfied when one party seeks to enjoin a proceeding in a foreign country (again, absent a treaty to that effect).

Furthermore, Vivendi's interpretation of the "dispositiveness" requirement is inconsistent with the way in which other courts in this circuit have applied the requirement.  Although other courts have not articulated precisely what is meant by the term "dispositive" in the *China Trade* inquiry, a number of cases have focused on

---

[11] In this case, there is no treaty between France and the United States governing the recognition and enforcement of judgments and jurisdictional decisions rendered by their respective courts.  *Vivendi III,* 242 F.R.D. at 96.

whether the substance of the claims and arguments raised in the two actions is the same.[12] As is relevant here, the Court has determined that the claims of French shareholders are properly before it. *Vivendi III,* 242 F.R.D. at 98, 102. Vivendi seeks to challenge precisely this issue in the Paris Action. Thus, the substance of the claims and arguments raised in the two actions are the same, and *China Trade*'s threshold requirements can be said to be satisfied on that basis.

Turning to the discretionary factors in the *China Trade* analysis, the first factor is whether the action to be enjoined threatens the jurisdiction of the enjoining court. On the facts presented here, the Paris Action does pose such a threat. By seeking to enjoin Gerard and Morel from prosecuting their claims in the United States, even though this Court has already held that it has jurisdiction over their claims, Vivendi is, in effect, asking the French courts to "carve out exclusive jurisdiction" over these plaintiffs. *China Trade,* 837 F.2d at 36. This constitutes a direct challenge by Vivendi to this Court's

---

[12] *See, e.g.*, *Suchodolski Assocs., Inc. v. Cardell Fin. Corp.*, No. 03 Civ. 4148 (WHP), 2006 WL 10886, at *3 (S.D.N.Y. Jan. 3, 2006) (decisions of district court arbitration panel on plaintiffs' abuse of control and fiduciary duty claims were dispositive of similar abuse of control and fiduciary duty claims in Brazil even though the former were asserted under New York law and the latter under Brazilian law because the Brazilian complaint "touched matters" covered by the panel's decision); *SG Avipro,* 2005 WL 1353955, at *3 (district court's determination regarding validity of lease agreement and whether defendant was required to arbitrate disputes was dispositive of Cameroon action seeking a decree that the lease agreement was invalid because although the action in the district court involved assessment of the validity of the lease agreement under federal law and the Cameroon action was seeking a declaration regarding the validity of the agreement under Cameroon law, the arguments and issues placed before the courts in both actions were the same); *Aruba Hotel Enters. N.V. v. Belfonti*, 611 F. Supp. 2d 203, 215 (D. Conn. 2009) (dispositiveness requirement was met where "it is the view of this court that a judgment from this court should have *res judicata* effect on the Aruban courts because the cases involve the same transactions and the issues are the same"); *A.P. Moller-Maersk A/S v. Ocean Express Miami,* 590 F. Supp. 2d 526, 533 (S.D.N.Y. 2008) (U.S. action regarding parties' liability on a delivery contract was dispositive of Panamanian and Guatemalan actions between the same parties relating to the same contract); *MasterCard v. Argencard,* 2002 WL 432379, at *10 (dispositiveness requirement was met where "MasterCard seeks in part a declaration under the License Agreement that it may revoke Argencard's exclusivity, which is precisely the main issue raised by Argencard in the Argentine action"); *cf. Computer Assocs. Int'l. v. Altai, Inc.*, 950 F. Supp. 48, 54 (E.D.N.Y. 1996) (U.S. copyright action was not dispositive of French copyright action where the latter "involve[d] issues that were neither raised, nor could have been raised, in the U.S. action").

jurisdiction over Gerard and Morel. *See id.* at 37 (citing *Laker Airways,* 731 F.2d at 917-21); *see also Quaak,* 361 F.3d at 20.

For similar reasons, the Paris Action also threatens to undermine what this Court has previously held to be a "strong interest" in enforcing the federal securities laws against foreign defendants alleged to have engaged in significant conduct in the U.S. that violates U.S. securities laws. *See Vivendi III,* 242 F.R.D. at 106. While the facts are hotly disputed, it is plaintiffs' contention that Vivendi's former CEO, Mr. Messier, perpetrated the charged securities fraud while operating from his New York headquarters during the relevant period. Concepts of international comity would appear to favor—or at least not oppose—the assertion of jurisdiction over the claims of those injured by such alleged wrongdoing regardless of their citizenship. To the extent that Vivendi is asking the French courts to prevent Gerard and Morel from prosecuting their claims, the United States' interest in enforcing its securities laws may be undermined.

The remaining *China Trade* factors also support the issuance of an anti-suit injunction in this case. The Paris Action is vexatious in the sense that its stated goal is to cause Gerard and Morel to withdraw from this proceeding. (*See* Palmer Decl. at Ex. C; Pl. Reply at 1.) And it is more than likely that parallel actions will increase expense, cause delay, and risk inconsistency. Moreover, the timing of Vivendi's filing of the Paris Action is troublesome. While Vivendi claims that this is the "only way" to bring French law issues before a French court, surely this is not so. Even if it were, there seems little justification in waiting for seven years after Gerard and Morel filed suit here to seek an injunction against them in the Paris Action.

In sum, if an anti-suit injunction were the only way to protect this Court's jurisdiction and prevent important United States policies from being undermined, an injunction, under *China Trade*, would almost certainly be proper. However, the Court is sensitive to comity considerations posed by the entry of a foreign anti-suit injunction. In view of these considerations, the Court declines to issue an anti-suit injunction at present because it finds that the potential threat to its jurisdiction can be avoided without doing so. *See Quaak,* 361 F.3d at 16 ("An inquiring court must find a way to accommodate conflicting, mutually inconsistent national policies without unduly interfering with the judicial processes of a foreign sovereign."); *id.* at 21 ("we encourage trial courts to search out alternatives that might avoid the need to issue antisuit injunctions").

At the argument on the present motion, Vivendi's counsel conceded that under Rule 23, "it is not necessary that there be French class representatives in order to have French shareholders included in this class." (Tr. 1272.) Thus, the class action can proceed with the three American class representatives serving as representatives for the entire class.[13] In addition, Vivendi's counsel represented at oral argument that should the Court relieve Gerard and Morel of their responsibilities as class representatives, Vivendi would not contend that French shareholders should be excluded from the class because there was no French shareholder representative. (Tr. 1271.) In the Court's view, these representations provide a pragmatic means by which to resolve the conflict raised by

---

[13] The Action before this Court involves a single class consisting of "all persons from the United States, France, England and the Netherlands who purchased or otherwise acquired ordinary shares or American Depository Shares of Vivendi Universal, S.A. between October 30, 2000 and August 14, 2002." *Vivendi III*, 242 F.R.D. at 109. There are no subclasses based on the nationality of class members or any other factor. *See id.* The class is represented by five class representatives—three American representatives and two French representatives—each of whom represents the entire class. *See id.* at 85-90. This Court has never held that French class representatives are necessary in order for French shareholders to be included in the class; indeed, it certified a class that includes shareholders from England and the Netherlands, even though there are no English or Dutch class representatives.

15

parallel proceedings without resorting to the issuance of a foreign anti-suit injunction. Since the Paris Action is directed towards Gerard and Morel in their capacity as representatives in this class action, relieving them of that role would appear to make it unnecessary for either court to issue an injunction that could infringe upon the jurisdiction of the other. In light of Vivendi's representations, this course of action will not affect the continued progress of the ongoing trial and will not result in the dismissal of any French shareholders from the class. Without finding that the Paris Action renders Gerard and Morel inadequate class representatives, the Court, in the interests of comity and on the basis of Vivendi's representations, hereby relieves them of their responsibilities as class representatives.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for a preliminary anti-suit injunction **[949]** is DENIED.

SO ORDERED.

Dated: New York, New York
       November 19, 2009

Richard J. Holwell
United States District Judge