UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE VIVENDI UNIVERSAL, S.A. SECURITIES LITIGATION | Civil Action No. 02 Civ. 5571 (RJH/HBP) ECF Case |

**PLAINTIFFS' MEMORNADUM OF LAW IN SUPPORT OF
RENEWED MOTION FOR APPROVAL OF POST-VERDICT
CLASS NOTICE AND CLAIMS ADMINISTRATION
AND TO REQUIRE VIVENDI TO PAY FOR THOSE PROCEDURES;
MOTION FOR ADJUSTMENT OF CLASS DEFINITION;
MOTION TO APPROVE PLAINTIFFS' PROPOSED PROCEDURES FOR THE
"INDIVIDUAL RELIANCE PHASE";
RENEWED MOTION FOR AWARD OF PREJUDGMENT INTEREST;
MOTION REGARDING PLAINTIFFS' APPLICATION
FOR ATTORNEYS' FEES AND COSTS**

Arthur N. Abbey
Stephen T. Rodd
ABBEY SPANIER RODD
 & ABRAMS, LLP
212 East 39th Street
New York, New York  10016
212.889.3700
*Lead Counsel for Class Plaintiffs*

Matthew Gluck
Michael C. Spencer
William B. Scoville, Jr.
MILBERG LLP
One Pennsylvania Plaza
New York, New York 10119
212.594.5300

Brian C. Kerr
BROWER PIVEN,
 A Professional Corporation
488 Madison Avenue, 8th Floor
New York, NY 10022
212.501.9000

*Counsel for Class Plaintiffs*

September 21, 2011

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit this memorandum of law in support of:

(a) Plaintiffs' renewed motion for approval of post-verdict notice to the class, claims administration and plaintiffs' proposed methodology for calculating damages for class members who submit claims, and for an order requiring Vivendi to pay for those activities. Plaintiffs submit that the methodology ultimately approved by the Court should be described or referred to in the class notice.

(b) Plaintiffs' motion to adjust the revised class definition set forth in the Court's February 17, 2011 Order, *In re Vivendi Universal, S.A. Securities Litigation*, 765 F. Supp. 2d 512, 587 (S.D.N.Y. Feb. 17, 2011) (the "February 17 Order"). Plaintiffs submit that the geographic limitation to four countries for ADS purchasers is no longer necessary or appropriate.

(c) Plaintiffs' motion for approval of their proposals regarding the appropriate procedures for the "individual reliance phase" of the case.

(d) Plaintiffs' renewed motion for an award of prejudgment interest. Plaintiffs submit that such an award should be described in the class notice.

(e) Plaintiffs' motion to set a schedule for their application for an award of attorney fees and reimbursement of nontaxable costs and expenses. Plaintiffs submit that the parameters and schedule for such application should be described in the class notice.

Plaintiffs respectfully submit that the case should move forward expeditiously with a single class notice covering all matters necessary for entry of final judgment on the ADS purchaser class.

## INTRODUCTION

On January 29, 2010, the jury in this case returned a verdict finding Vivendi liable for issuing 57 fraudulent statements and assessing per-share damages in favor of Vivendi's class period investors.[1]  On March 31, 2010, plaintiffs moved for several forms of post-trial relief, including entry of final judgment, dissemination of post-verdict notice, approval of a claims administration program, the methodology for calculating damages and awarding prejudgment interest.  Vivendi opposed the motions, contending (among other things) that it had a right to conduct further trials in an attempt to rebut the presumption of reliance as to each class member.  The list of purportedly relevant issues included individual claimants' financial sophistication, their particular trading strategies, and whether their reliance was reasonable.[2]  In the February 17 Order, which addressed numerous post-trial issues, this Court denied plaintiffs' motions without prejudice to renew.  On the reliance issue, the Court held that some further inquiry into class members' purchase decisions, regarding whether they would have purchased Vivendi shares even if they had known of the fraud, might be justified.  *Vivendi*, 765 F. Supp. 2d at 584-86.  The February 17 Order did not, however, address the specifics of reliance and invited further briefing.  *Id.*

Taking the February 17 Order into account, plaintiffs propose that, with respect to reliance, Vivendi set forth, on a pleading-type basis, its grounds for rebutting the presumption of

---

[1]   The February 17 Order upheld the verdict against numerous post-trial challenges as to all but one of the 57 statements.  765 F. Supp. 2d at 544.

[2]   *See* Vivendi, S.A.'s Memorandum of Law in Opposition to Plaintiffs' Motion for Entry of Final Judgment, dated May 12, 2010 ("Final Judgment Opp.") (Dkt. No. 1040), at 5-10; Vivendi's Memorandum of Law in Opposition to Plaintiffs' Motion for Approval of Post-Verdict Class Notice and Claims Administration, And to Require Vivendi to Pay for it, dated May 12, 2010 ("Claims Opp.") (Dkt. No. 1042), at 15-16.

reliance as to any particular class member(s). Alternatively or in addition, the Court may wish to order inclusion of interrogatories concerning the claimant's reliance in the claim forms to be submitted by class members claiming damages. Plaintiffs have proposed two such interrogatories as part of the proposed claim form submitted herewith. In the event Vivendi demonstrates a basis for further inquiry into a claimant's individual reliance, the parties or the Court could then determine any appropriate further procedures.

In addition, plaintiffs submit that Vivendi's general description of how it proposes to rebut the presumption of reliance goes well beyond the contours of the February 17 Order and the applicable law. Because Vivendi has not yet made any specific proposals about how it would proceed, plaintiffs cannot address the issue in any detail. The argument below attempts to identify a few matters that plaintiffs submit should *not* be within bounds for this phase of the trial.

In the final sections of this brief, plaintiffs set forth views on how other procedures should be carried out so that the post-verdict class notice will cover all matters necessary for eventual entry of final judgment.[3]

## ARGUMENT

I. **The Proper Scope for Rebutting the Presumption of Reliance**

The February 17 Order applied the analysis of the presumption of reliance, and its possible rebuttal, as set forth in *Basic v. Levinson*, 485 U.S. 224 (1988). The Supreme Court in *Basic* identified two categories of rebuttal, class-wide and individual, and summarized the

---

[3] Plaintiffs' Motion for Entry of Judgment as to the Claims of Ordinary Share Purchasers Pursuant to Federal Rule of Civil Procedure 54(b) (Dkt. No. 1086), reflecting the Court's dismissal of the claims of members of the original class other than ADS purchasers, is under submission.

3

distinction by noting that a successful rebuttal severs the link between the fraud and "either the price received (or paid) by the plaintiff [class-wide rebuttal], or his decision to trade at a fair market price [individual rebuttal]." *Id.* at 248. Class-wide rebuttal essentially consists of various truth-on-the-market defenses and relates to a publicly traded stock's share price. *See id.* at 248-49 (fraud not transmitted through market price where market makers are privy to truth or where truth credibly enters market and dissipates effects of misstatements). Rebuttal of individual reliance, on the other hand, can only be shown by proving either (1) that an individual purchased while possessing material non-public information, or (2) that a purchase was motivated entirely by reasons unrelated to the precise value of the stock and would have occurred even if the purchaser knew of the fraud. Examples of the second type of trade include purchasing or divesting stock for political reasons or tax benefits, or due to antitrust considerations. *See id.* at 249.[4]

The Court determined in the February 17 Order that Vivendi had attempted to rebut the presumption on a class-wide basis at trial, but the jury was not persuaded by Vivendi's argument that the market was aware of its true liquidity condition. 765 F. Supp. 2d at 584. Vivendi's remaining opportunity to rebut reliance would be to prove on an individual basis that a claimant traded in possession of material non-public information or that the claimant would have made the same purchase(s) even if the claimant had known of the fraud.

As rebuttal, Vivendi has argued that it may seek to examine individual class members' financial sophistication, their trading strategies, and the reasonableness of their reliance on the

---

[4]   *See also*, *Vivendi*, 765 F. Supp. 2d at 584 (citing *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 262 (D. Mass. 2005)).

integrity of the market.[5]  However, all of those inquiries are *outside* the bounds of Vivendi's right to rebut, which remains limited to showing either that a claimant purchased in possession of material non-public information or that the claimant would have made the same purchases even if aware that Vivendi's share price was fraudulently inflated.  *See e.g. In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 641 (3d Cir. 2011) (rejecting defendant's effort to rebut reliance by showing claimant used sophisticated trading strategies based on private research).

In particular, Vivendi's argument that it has the right to challenge the *reasonableness* of each claimant's reliance on the market price also goes beyond rebutting individual reliance.  Vivendi cites *Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 633 (D.N.J. 2003), in support,[6] but the referenced passage stands for nothing more than the unremarkable proposition that an investor's reliance on the integrity of market price cannot be reasonable if he trades with *actual knowledge* of the fraud that has distorted that price.  On the other hand, a general inquiry into the "reasonableness" of the claimant's reliance on the market price would involve retrying the issue of whether the *market*'s valuation of Vivendi stock was reasonable, which was already resolved at trial.[7]  "Reasonableness" is an objective inquiry, subject to being judged not on facts peculiar to an individual investor, but rather based on facts available publicly.[8]  "Truth on the market"

---

[5]     *See* Final Judgment Opp. at 5-10; Claims Opp. at 15-16.

[6]     Final Judgment Opp. at 7, 8.

[7]     This is reflected in the Court's observation that "[i]n this case, plaintiffs proved the element of 'justifiable reliance' on Vivendi's misrepresentations on a class-wide basis through the fraud-on-the-market theory."  *Vivendi,* 765 F. Supp. 2d at 583.  In this context, "justifiable" and "reasonable" reflect the same concept.

[8]     *See Lewis v. Marine Midland Grace Trust Co.*, 63 F.R.D. 39, 42 (S.D.N.Y. 1973); *see also*, *Caiola v. Citibank, N.A.*, 295 F.3d 312, 329 (2d Cir. 2002) ("materiality is an objective standard").

5

has already been tried.[9] In finding Vivendi liable, the jury necessarily decided that Vivendi's misstatements and omissions were material to reasonable investors (and were false and misleading), notwithstanding Vivendi's contention that the information available to the market disclosed what plaintiffs claimed was concealed.[10]

## II.     Procedures Applicable to Post-Verdict Reliance Issues

The procedures applicable to resolution of post-verdict reliance issues should be the same as the procedures governing any other issue.  First, Vivendi may make only those factual contentions that, to the best of its knowledge, information, and belief formed after reasonable inquiry, will likely have evidentiary support.  Fed. R. Civ. P. 11(b)(3).  *See United States Life Ins. Co. v. Blum*, No. 09 Civ. 9416 (LTS)(JCF), 2011 U.S. Dist. LEXIS 1531, at *13 n.2 (S.D.N.Y. Jan. 3, 2011) (noting "obligation to have a good faith basis for any claims and defenses [asserted]").  Its factual assertions must, of course, fall within the narrow confines remaining for possible rebuttal of the presumption of reliance, as discussed above.  Plaintiffs submit that the first step in this phase of the case should be a requirement that Vivendi submit -- essentially, plead -- its claims that any class member(s) either received material non-public information or purchased despite knowledge of its fraud.

In the event that Vivendi satisfies its "pleading burden" for any class members, or if the Court otherwise decides that some discovery devices should be generally available to Vivendi for the limited purpose of rebutting the presumption of reliance, plaintiffs have proposed two

---

[9]     For example, at trial Vivendi introduced evidence of analyst reports issued by Bernstein Research and BNP Paribas in an attempt to bolster its truth-on-the-market defense.  *See e.g.* Tr. at 1848:8-12 (Mr. Hannezo's testimony concerning a January 16, 2002 Bernstein Research report (DX-216); Tr. at 3753:18-19 (cross-examination of Dr. Nye re May 3, 2002 BNP Paribas report (DX-240)).

[10]    *See* Jury Instruction No. 23, "Materiality" subsection, at 26.

6

interrogatories for inclusion with the claim form, to be answered by any claimant that seeks to recover in the case. The interrogatories are:

1. When you bought your Vivendi securities, did you know that the company was making false and misleading statements to the public? (If you answer "yes," your claim will be denied. If you answer "no," your claim may proceed.)

2. Did you buy your Vivendi securities for reasons totally unrelated to their economic value? (If you answer "yes," your claim will be denied. If you answer "no," your claim may proceed.)

If the Court allows the interrogatories, the responses should be evaluated in light of the standards for a defendant's rebuttal of the presumption of reliance to determine whether any further discovery or other proceedings should be made available. Although Vivendi has discussed jury trial rights, plaintiffs submit that the issue is premature until it is determined whether any triable issues regarding the rebuttal of the presumption of reliance exists, and if so the appropriate scope and parameters.

## III.    The Revised Notice and Claim Forms

Plaintiffs incorporate into this renewed motion those elements of their Motion for Approval of Post-Verdict Class Notice and Claims Administration, and to Require Vivendi to Pay For It (Dkt. No. 1024) that are consistent with the February 17 Order. Thus plaintiffs renew their request for (1) the appointment of The Garden City Group, Inc. (GCG) as claims administrator to provide post-verdict notice and claims administration services; (2) approval of the rules for calculation of damages set forth in Dr. Nye's March 30, 2010 Declaration;[11] and (3) an order requiring Vivendi to pay for notice and claims administration procedures. Plaintiffs

---

[11]    Exhibit B to the Margolies Decl., dated March 31, 2010 (Dkt. No. 1026).

7

further request approval of the revised proposed forms of notice and claim forms[12] that, while based on the forms submitted with their original motion, have now been edited to reflect this Court's redefinition of the class (and including the further adjustment in class definition language proposed below) and to include the possible interrogatories concerning claimants' individual reliance on the integrity of the market. Plaintiffs' proposed notice procedure has also been modified to conform to longstanding practice for notification of class members in class actions involving U.S. securities. GCG will use its proprietary database of domestic nominee securities holders to mail notice to those class members identifiable through reasonable effort, and summary notice will be published in one or more national newsmedia. *See Gordon v. Hunt*, 117 F.R.D. 58, 63 (S.D.N.Y. 1987) (combination of mailed and published notice "long-accepted norm in large class actions").

## IV. Adjustment of Class Definition

In its decision concerning, among other things, the application of *Morrison* to this case, this Court redefined the class to include: "all persons from the United States, France, England and the Netherlands who purchased or otherwise acquired American Depositary Shares of Vivendi between October 30, 2000 and August 14, 2002." *Vivendi,* 765 F. Supp. 2d at 587.

In light of *Morrison*, the reference to the four countries is no longer necessary and might be confusing to the ADS-purchaser class members. Plaintiffs suggest that the language be adjusted to read: "all persons who purchased or otherwise acquired American Depositary Shares

---

[12] Declaration of Stephanie Amin-Giwner in Support of Plaintiffs' Renewed Motion for Approval of Post-Verdict Class Notice and Claims Administration and to Require Vivendi to Pay for Those Procedures; Motion for Adjustment of Class Definition; Motion to Approve Plaintiffs' Proposed Procedures for the "Individual Reliance Phase;" Renewed Motion for Award of Prejudgment Interest; Motion Regarding Plaintiffs' Application for Attorneys' Fees and Costs, dated September 21, 2011, Exs. A-C.

(often referred to as ADSs or ADRs) of Vivendi between October 30, 2000 and August 14, 2002." The sophisticated analysis that the Court undertook in its original class certification decision concerned the issue of determining which countries would recognize a U.S. class judgment (particularly a judgment adverse to the class) based on the application of U.S. law to foreign securities transactions. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 98 (S.D.N.Y. 2007) (analyzing whether the French doctrine of "equivalence" permits the application of U.S. law to trades on foreign exchanges). That question, however, does not exist in cases exclusively involving securities listed and traded in the U.S. Plaintiffs submit that since all purchasers of foreign securities have now been excluded from the class, the geographic limitations included in the original 2007 decision are no longer necessary or appropriate. The Court should instead follow long-standing precedent in cases involving domestic securities, which cases uniformly approve entry of judgment on behalf of global purchaser classes.[13] Such precedent is entirely consistent with *Morrison*, which affirmed the viability of securities fraud claims by purchasers of domestic securities (such as Vivendi ADRs) regardless of the purchasers' place of residence.

Plaintiffs propose that Rule 23(c)(3)(B)'s requirements be met by affording class members who are not from the original four countries a chance to opt out now. Although the original deadline for requesting exclusion has passed, courts in this district have allowed late opt-outs where a moving party has shown "both good faith and a reasonable basis for not acting within the specified period." *In re NASDAQ Market-Makers Antitrust Litig.*, 182 F.R.D. 69, 71 (S.D.N.Y. 1998) (quoting *In re Prudential Securities Inc. Limited Partners Litig.*, 164 F.R.D.

---

[13] *See e.g. In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009) (entering judgment on behalf of class consisting of "all persons who

362, 369 (S.D.N.Y. 1996)).  Any new class members requesting exclusion obviously have more than a reasonable basis for not having acted sooner, as their very inclusion would be part of the post-verdict modifications to the class occasioned by the Supreme Court's holding in *Morrison*. Plaintiffs' proposed forms of notice therefore include instructions to new class members on requesting exclusion from the class.

## V.  Prejudgment Interest

Plaintiffs also renew their Motion For An Award Of Prejudgment Interest (Dkt. No. 1017).  As set forth in the memorandum of law in support of that motion (Dkt. No. 1019), such an award is appropriate, and its method or rate of calculation should be included in the class notice as part of a complete description of what the verdict provides as relief to class members.

## VI.  Attorney Fees and Expenses

The class notice should include information that class counsel will be applying for an award of attorney fees and reimbursement of nontaxable costs and expenses, with a description of the parameters for the application, in accordance with Fed. R. Civ. P. Rule 23(h).  The class notice should also give notice of the application and the hearing to be scheduled by the Court at a time when claims by class members can be assessed, in compliance with 15 U.S.C. § 78u-4(a)(6).

---

purchased or otherwise acquired MMC securities between October 14, 1999 and October 13, 2004").

10

## CONCLUSION

For the foregoing reasons, plaintiffs renew their request for the relief sought in their original motions, as modified herein, and for other relief as set forth herein.

Dated: September 21, 2011

          Respectfully submitted,

          ABBEY SPANIER RODD & ABRAMS LLP

          /s/ Arthur N. Abbey
          _____

          Arthur N. Abbey
          Stephen T. Rodd
          Stephanie Amin-Giwner
          Richard B. Margolies
          212 East 39th Street
          New York, New York 10016
          212.889.3700

          *Lead Counsel for Class Plaintiffs*

          MILBERG LLP
          Matthew Gluck
          Michael C. Spencer
          William B. Scoville, Jr.
          One Pennsylvania Plaza
          New York, New York 10119
          212.594.5300

          BROWER PIVEN,
           A Professional Corporation
          Brian C. Kerr
          488 Madison Avenue, 8th Floor
          New York, NY 10022
          212.501.9000

          *Counsel for Class Plaintiffs*