

ABBEY SPANIER LLP
ATTORNEYS AT LAW

212 EAST 39TH STREET

NEW YORK, NEW YORK 10016

PHONE 212 889 3700

FAX 212 684 5191

www.abbeyspanier.com

August 12, 2014

BY ECF AND HAND DELIVERY

The Honorable Shira A. Scheindlin
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1620
New York, NY 10007

    Re:   *In re Vivendi, S.A. Securities Litigation,* No. 02 Civ. 5571 (SAS)

Dear Judge Scheindlin:

    On behalf of Class Plaintiffs in the above-referenced action, we write to update the Court on the status of the claims administration process and the parties' negotiations concerning additional discovery on the issue of reliance.

    When this Court approved the parties' plan for administering the claims process over two years ago, Vivendi represented that it would only seek additional discovery for the purpose of challenging the reliance of "larger institutional investors who we think are likely candidates for investors who did not rely on the efficiency of the market in making their purchase decisions." Tr. (7/17/12) at 11:24–12:3. Similarly, the Court's Order establishing the claims procedure only permitted Vivendi to serve interrogatories relating to reliance on a "limited number of 'sophisticated persons and entities'" and did not contemplate the use of other discovery devices such as depositions or document requests. July 5, 2012 Order (Dkt. No. 1147) at 22.

    The Court's Order limiting discovery to discrete interrogatories has since been supported by the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014). The *Halliburton* Court not only upheld the fraud-on-the-market presumption of reliance established in *Basic, Inc. v. Levinson,* 485 U.S. 224, 248 (1988), but also rejected the argument (raised by Halliburton as well as Vivendi as *amicus*) that certain investors are wholly indifferent to market price. 134 S. Ct. at 2411.[1] This Court has relied on the very same logic, noting that even if investors use algorithms to determine their valuation of a security, "the figures plugged into the algorithm" are still "right out of the market," and

---

[1] As the Court explained, "[T]here is no reason to suppose that even Halliburton's main counterexample—the value investor—is as indifferent to the integrity of market prices as Halliburton suggests. Such an investor implicitly relies on the fact that a stock's market price will eventually reflect material information—how else could the market correction on which his profit depends occur? To be sure, the value investor 'does not believe that the market price accurately reflects public information at the time he transacts.' . . . But to indirectly rely on a misstatement in the sense relevant for the *Basic* presumption, he need only trade stock based on the belief that the market price will incorporate public information within a reasonable period. The value investor also presumably tries to estimate how undervalued or overvalued a particular stock is, and such estimates can be skewed by a market price tainted by fraud." *Id.*

ABBEY SPANIER, LLP
August 12, 2014
Hon. Shira A. Scheindlin

thus "the baseline that you're starting with is the market price." Tr. (7/17/12) at 11:2–9.

Despite this Court's Order and the *Halliburton* decision, Vivendi has proposed a discovery plan that far exceeds the scope anticipated by the parties and the Court. Vivendi's initial proposal seeks discovery from 26 different claimants plus the Class Representatives. Vivendi's proposal envisions full-blown document discovery, consisting of 16 separately-numbered requests for production and one interrogatory, which appears to ask for the identity of someone for Vivendi to depose. This proposal, which ignores the Court's Order and contradicts Vivendi's prior representations, will only delay an already protracted process. Moreover, adopting Vivendi's proposal may dissuade claimants from pursuing the compensation lawfully owed to them. Faced with a choice between spending tens of thousands of dollars on legal representation to respond to Vivendi's sweeping document requests and potential deposition discovery or abandoning their claims altogether, it is plausible that investors with lower claims will choose the latter.[2]

Plaintiffs, by contrast, propose a targeted approach to that separates claimants into three groups for discovery purposes: (1) the claimants Vivendi is not challenging (the "unopposed claimants"); (2) the Class Representatives; and (3) the claimants Vivendi intends to challenge on reliance grounds.

As to the first group—the unopposed claimants—litigation is complete. Their claims have been approved by the claims administrator, Garden City Group (GCG) and represent aggregate damages of about $50 million before adding pre-judgment interest. Vivendi has not requested additional discovery related to their reliance. Because the jury verdict in this case resolved all other issues related to these plaintiffs' 10(b) claims, such claimants have fully established their right to compensation. Thus, as discussed below, plaintiffs intend to move the Court to enter a Rule 54(b) partial final judgment as to these claimants so that an appeal can go forward.

With respect to the second group—the Class Representatives—there is no sound basis to allow Vivendi additional discovery. Class Representatives William Cavanaugh, Bruce Doniger, and the City of Miami Beach Unclassified Employee Retirement System ("Miami Beach"), have already presented copious evidence in discovery of their reliance on the market price of Vivendi's securities. For instance, Mr. Cavanagh provided deposition testimony that he believed that Vivendi was a good "long-term investment" based on his review of "financial information available about the company." Cavanagh Dep. at 205:11–24. He further testified that he believed that Vivendi's "stock price reflected what was available to the public market," *id.* at 255:8–11, and that he relied upon the integrity of the market price for Vivendi shares, *id.* at 271:17–20. Mr. Doniger provided similar testimony. *See* Doniger Interrogatory Responses at 17; Doniger Dep. (May 17, 2005) at 123:4–7. For its part, Miami Beach stated in discovery that it relied on the professional judgment of its investment manager and on the "integrity of the market price for Vivendi securities." *See* Miami Beach Interrogatory Responses (Aug. 17, 2004) at 17–18. Such testimony establishes that the Class

---

[2] For instance, Vivendi's initial proposal reflects its intent to demand document production and challenge the reliance of claimants that cannot be considered large institutional investors, including two school endowment funds whose claims amount to $71,760 and $139,988 respectively. It is difficult to imagine what incentive such claimants would have to pursue the compensation owed to them if it means spending a comparable amount or more to defend against Vivendi's reliance challenge.

ABBEY SPANIER, LLP
August 12, 2014
Hon. Shira A. Scheindlin

Representatives did, in fact, rely on Vivendi's public statements and the integrity of its market price. Because *Halliburton* did not change the scope of the fraud-on-the-market presumption such that further discovery would be appropriate, Vivendi needs no additional opportunity to develop evidence on this issue.

In addition, the three Class Representatives have submitted claims showing that they suffered real (but modest) economic losses as a result of Vivendi's fraud. Together, their damages total less than $30,000. They plainly do not fall into the category of claimants the Court had in mind when it approved the discovery plan, nor do they fall within Vivendi's representation that it would limit itself to challenging "large institutional investors." Rather than allow Vivendi to seek information already obtained from the Class Representatives, Plaintiffs request that the Court include them in an order granting partial final judgment, as discussed below.

As to the third group—the claimants Vivendi intends to challenge on reliance—Plaintiffs propose that Vivendi proceed with discovery by directing a small number of discrete interrogatories only to those claimants on its initial list having damages exceeding $1 million. This limitation would leave eight claimants (from Vivendi's list of 26) subject to additional discovery. Plaintiffs propose that the other 18 claimants from Vivendi's list be included in the group of unopposed claimants. This approach makes sense given that the combined damages of the larger eight claimants (approximately $47.6 million) represent almost half of the total damages found eligible by GCG. By contrast, the other 18 challenged claimants have damages ranging from $51,030 to $430,460 and total less than $3 million. Moreover, this approach adheres not only to the Court's original discovery plan but also to Vivendi's representation that it would only attempt to rebut the presumption of reliance as to "large institutional investors."

Once limited written discovery has been conducted as to the eight claimants with claims over $1 million, and the Special Master has reviewed those responses for evidence of lack of reliance, the Court can resolve such claims on motions for summary judgment.

Finally, Plaintiffs respectfully request a pre-motion conference in order to file a motion for partial final judgment as to the unopposed claimants and the Class Representatives. Pursuant to Federal Rule of Civil Procedure 54(b), this Court may enter partial final judgment "as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). Partial final judgment is appropriate where the court determines (1) that there is a "final judgment," and (2) that there is no just reason for delaying final judgment on a subsection of the claims or parties, taking into account equitable considerations, the interests of efficient judicial administration, and the general policy against piecemeal appeals. *See Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7–8 (1980). As Plaintiffs will fully explain in their motion, these standards are met here.

In sum, Plaintiffs propose a process whereby Vivendi may serve a limited set of interrogatories to the eight institutional investors with claims over $1 million which Vivendi has initially designated. In the meantime, Plaintiffs request a pre-motion conference to file a motion asking the Court to enter partial final judgment as to the Class Representatives and the unopposed claimants. This proposal would accord with the Court's previous guidance on additional discovery and would allow the appeal of the vast majority of class members who have final claims to move forward, putting them closer to being made whole.

ABBEY SPANIER, LLP
August 12, 2014
Hon. Shira A. Scheindlin

                          Respectfully submitted,

                          ABBEY SPANIER, LLP

                          /s/ Arthur N. Abbey
                          By:   Arthur N. Abbey
                                  ABBEY SPANIER, LLP
                                  212 East 39th Street
                                  New York, NY 11106
                                  212-889-3700
                                  aabbey@abbeyspanier.com

cc: All Counsel (by ECF)